[No. 19629.  Department Two.  April 12, 1926.]

FRANCES HIATT, *Appellant*, v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents.*[1]

[1] RAILROADS (74, 75)—INJURY TO PERSON ON TRACK—CARE REQUIRED AS TO LICENSEES—QUESTION FOR JURY.  Whether trainmen were guilty of wanton and wilful negligence, rendering the company liable for the wrongful death of a trespasser or licensee on the tracks, is a question for the jury, where the night was dark and stormy, the train crew must have seen the parties proceeding along tracks where the public was accustomed to cross at any point, and in a very short time thereafter made a flying switch, sending a car along after them without any lights or any one on board to give warning.

[2] SAME (80)—CONTRIBUTORY NEGLIGENCE OF PERSONS ON TRACK—EVIDENCE—SUFFICIENCY.  Pedestrians, who watched a switch engine until it passed a switch, before starting to cross the tracks are not guilty of contributory negligence in failing to anticipate the negligence of the train crew in dropping a car towards them down a "Y" by a flying switch, unattended and without any lights.

¹Reported in 244 Pac. 994.

Appeal form a judgment of the superior court for Grays Harbor county, Abel, J., entered April 13, 1925, dismissing an action for wrongful death on granting a nonsuit, after a trial before a jury. Reversed.

*Forney & Ponder,* for appellant.

*Geo. T. Reid* and *C. H. Winders,* for respondents.

MAIN, J.—The plaintiff brought this action for the purpose of recovering for the death of her son, four years old. The case came on for trial before the court and a jury. At the conclusion of the plaintiff's evidence, the defendant moved for a nonsuit, which was sustained and a judgment entered dismissing the action. From this judgment the plaintiff appeals.

The accident happened in South Aberdeen, in Grays Harbor county of this state, in a portion of the city where the streets are unimproved and where sawmills and lumber yards are located. The Chehalis river flows to the west and is to the north of the sawmills, railway tracks and lumber yards. Mill street extends north and south. The main line track of the respondent, which will be referred to as though it were the only party against whom the action was brought, runs east and west and crosses this street. At this point there is a "Y," the "Y" track connecting with the main line a short distance west of Mill street. The "Y" track extends from that point in a southeasterly direction until it connects with the O. & W. track, which runs in a northwesterly and southwesterly direction. South of the "Y" track and east of Mill street is located what is referred to as the section foreman's house. North of the respondent's main line track, and what would be east of Mill street if it were extended, is the Donovan Lumber Company's mill. East of this is the Wilson mill. South of the respondent's main line track

and east of the O. & W. track, where the "Y" connects with that track, lumber is stored. The space south of the "Y" is also used for the storage of lumber.

The boy, for whose death the action was brought, at the time was in the care and custody of one Mrs. Opal Hoffman, and at the time of the accident was with Mrs. Hoffman and Mrs. Ethel Chausse. The husbands of these two women worked in the Wilson mill. Mrs. Chausse lived south of the Chehalis river and some distance west of where it is crossed by the O. W. Railway Company.

On the evening of December 13, 1923, Mrs. Hoffman had taken the little boy and gone to the residence of Mrs. Chausse, where they remained until about 1:15 a. m., when they started to the Wilson mill to meet their husbands who would be relieved from their shift at 1:40 a. m. When they left Mrs. Chausse's residence, they proceeded in a southeasterly direction until they came to the main line track of the respondent, which they approached just west of where the "Y" connects with the main track. At this time, an engine was standing to the west and a man was standing at the switch post. They crossed the track to the south side thereof and proceeded east along the south side of the "Y" track, until they got in front of the section foreman's house. Here they stopped and watched the engine, until it proceeded east and past the "Y" switch connection. Then they started across the "Y" track.

The engine, before proceeding east, made what is called a flying switch, or the drop of a car by which the car was pushed ahead of the engine with such momentum that it would pass through the "Y". After the car passed the switch, this was turned and the engine passed to the east on the main track. The car that came down the "Y" track had no light on it and no one was on it to give warning. The night was dark and

rainy. After Mrs. Hoffman and Mrs. Chausse and the little boy started across the "Y", and were probably in about the center of the track, someone from the engine which was then just north on the main track shouted. Mrs. Hoffman screamed and leaped from the track just as the car passed by. Mrs. Chausse and the little boy were struck by the end of the car and it passed over both of them. After it had passed, the boy's body was betwen the rails and his head was on the outside. The one had been severed from the other. The space within the "Y" and the main line track had been leveled and covered with cinders and gravel. There is evidence that it was the practice of mill employees and others to cross this "Y" track at any point, both night and day.

There is much discussion in the briefs as to whether Mrs. Hoffman and Mrs. Chausse and the boy were trespassers or licensees at the time of the accident. It is unnecessary to determine this question because the measure of duty on the part of the respondent in either case is the same. In the absence of wilful or wanton injury there would not be any liability. *Waller v. Smith,* 116 Wash. 645, 200 Pac. 95; *Bolden v. Independent Order of Odd Fellows,* 133 Wash. 293, 233 Pac. 273. There are many other cases from this court holding to the same effect but it is not necessary to assemble them here as the rule is well settled. There is no evidence in the present case of wilful injury.

[1] The question, therefore, is whether those in charge of the operation of respondent's engine and the switching of the car were guilty of conduct which the jury had a right to find was wanton. A wanton injury, generally speaking, is one which is inflicted in disregard for another's rights. Words & Phrases (2d series) vol. 4, p. 1236; 20 R. C. L. p. 20. So the

inquiry here must be, whether the evidence was such that the cause should have been submitted to the jury. As above noted, the evidence showed that people passed across this "Y" at all hours of the day and night. There was no particular beaten path, but they crossed at any point. The night was dark and rainy. The use of the "Y" by pedestrians was sufficient to charge the respondent with knowledge thereof. In addition to this, the member of the crew that was at the switch post must have seen the two women and the boy cross and proceed down along the south side of the "Y" track. Within a very short space of time after this, the car passed down that track after them, with no light and no one aboard to give warning. It rolled silently through the darkness, and after they had observed the engine upon the main track proceeding east and attempted to cross, it came upon them. To send the car down the "Y," under circumstances detailed by the evidence, was conduct from which the jury had a right to find that there had been a reckless disregard of the rights of the pedestrians. The fact that the crossing of the "Y" was not in any definite and fixed place or upon any particular path does not prevent a recovery. In *Tutt v. Illinois Central R. Co.*, 104 Fed. 741, after stating the rule of liability with respect to licensees it was said:

"It is argued that this doctrine applies only where a definite and fixed crossing has been established, to be likened unto a public crossing. We do not think the doctrine should be thus limited."

In *Conley's Adm'r v. Cincinnati, N. O. & T. P. R. Co.*, 89 Ky. 402, 12 S. W. 764, it was held that the detaching of part of a train and allowing it to run into a small town with houses on either side of the track, with no lights in front, no bell or other signal to announce its

approach, and no one to look out for persons on the track, was such a departure from the defendant's duty to the public as to entitle the plaintiff to recover, though his intestate was a technical trespasser.

In *Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R. A. 855, it was held that where the public had been in the habit for a long time of using, at a point not in a traveled public highway, the right of way of a railroad as a path in passing from one part of the city to another and the railroad company had knowledge of the fact, that this right of way was so traveled by the public almost every hour of the day, its acquiescence in the public use amounts to a license and imposes upon it a liability, if it fails to exercise the proper degree of care. It was there said:

"This appellant to save the expense of an employee for a few minutes, hurled not only one but two blind cars down this right of way, regardless of the fact, which it must have known under the circumstances as shown by the testimony, that they were liable to cause the death or permanent injury of some one; and we think that this fact alone establishes gross and willful negligence, notwithstanding the fact that none of the employees saw the danger of the plaintiff in this case, and, of course, under all the authorities, a railroad company is not allowed to run down and destroy a naked trespasser who is upon its track, but is held to be responsible for an attempt to prevent his injury after his peril is discovered."

In Thompson on Negligence, vol. 2, § 1717, it is said:

"This method of switching has been a fruitful source of accidents to persons either walking upon the track or coming upon it at public crossings. It consists in detaching a portion of the train to be switched off while the cars are in motion, the fore part of the train advancing with increased speed, while the rear portion proceeds more slowly, and at the proper point is switched off upon the desired track. Or the locomotive,

without being coupled, may back up a car or a portion
of a train with considerable speed, and, giving it a
parting kick, send it off alone in any desired direction.
This practice has been frequently condemned by the
courts. It is so inherently dangerous that many courts
have held the railway company liable, on the footing
of negligence, even to trespassers injured in this way
without any other fault or negligence on their part
than the fact of being upon the track. The turning
loose of cars in swift motion upon a switch track,
where men are constantly passing and repassing upon
a footpath, though not a street crossing or a public
thoroughfare, has justly been held to be actionable
negligence, and the court repudiated the suggestion
that in such a case persons crossing the track are not
entitled to any care for their safety, until their danger
is seen.''

The question was one for the jury.

[2] The next question is whether the two women
were guilty of contributory negligence in attempting to
cross the ''Y'' track. They testified, as stated, that
they stopped in front of the section foreman's house
and waited until they saw the engine pass the switch
and proceed east on the main line track. They then
attempted to cross without taking further precautions
having no thought that a freight car had been dropped
down the ''Y'' and was approaching them. In *Steele
v. Northern Pac. R. Co.*, 21 Wash. 287, 57 Pac. 820, an
instruction was approved which, in part, told the jury
that, if the defendant, by his own act, threw the plaintiff
off his guard, the plaintiff's lack of vigilance could
not be regarded as negligence, and that one is not
chargeable with contributory negligence in failing to
anticipate the negligence of another and in not providing
against it. In applying the rule of that case to
the facts of the present, it may be said that Mrs. Hoff-
man and Mrs. Chausse were not required to anticipate
the negligence of the respondent in dropping a car

down the "Y" track under the circumstances already detailed. In *Brown v. New York Central R.,* 32 N. Y. 597, it was said:

"I think it is asking too much to say that it was negligence, as matter of law, not to have anticipated that detached cars were following in the rear of the train that had passed. The signals of the train had told him where the danger was, but gave no warning of unsignaled danger to follow."

The case of *Scharf v. Spokane & Inland Empire R. Co.* 92 Wash. 561, 159 Pac. 797, is clearly distinguishable upon its facts and is not here controlling.

This question was also one for the jury.

The judgment will be reversed and the cause remanded with directions to the superior court to order a new trial.

TOLMAN, C. J., MITCHELL, MACKINTOSH, and PARKER, JJ., concur.