[No. 20222.  Department One.  April 15, 1927.]

MABEL CLARK, *Respondent*, v. LONGVIEW PUBLIC SERVICE
COMPANY, *Appellant*.[1]

[1] APPEAL (370)—REVIEW—THEORY OF CASE.  In an action for
personal injuries sustained through contact with high voltage
wires, error cannot be assigned upon the refusal to grant a non-
suit for failure to prove a case on the doctrine of attractive
nuisance, where the cause was tried and the jury instructed
upon the general theory of negligence.

[2] ELECTRICITY (5)—INJURY INCIDENT TO PRODUCTION—NEGLIGENCE
—EVIDENCE—SUFFICIENCY.  Where the owner of premises knew
that young and old people were in the habit of congregating in
great numbers near its pump house and enclosure guarding
high voltage wires, the jury is justified in finding that the
owner should have reasonably anticipated that a young person
might enter the enclosure through holes in the fence and come
in contact with the wires; and this, whether the injured party
was an invitee, a licensee or a trespasser.

[3] SAME (4)—INJURY TO INFANT—CONTRIBUTORY NEGLIGENCE—
QUESTION FOR JURY.  It is for the jury to determine whether
it was contributory negligence for a girl, eighteen years of age
to enter an enclosure guarding high voltage wires and receive
a shock, when a few loose hairs, by touching wires, caused a
short circuit, where the wires gave no indication of their
dangerous character.

[4] SAME (4)—INJURIES INCIDENT TO USE—DUTY TO OTHERS.  In an
action for injuries through coming in contact with high voltage
wires, it is proper to refuse an instruction that defendant's
only duty was to refrain from inflicting lawful or wanton in-
jury.

[5] DAMAGES (80)—EXCESSIVE DAMAGES—PERSONAL INJURIES.  A
verdict for $25,000 for personal injuries, sustained by a girl
eighteen years of age through contact with high voltage wires,
will not be held excessive, where her skull was burned, exposing
the brain tissue to such an extent that her remaining life is one
of constant torture.

Appeal from a judgment of the superior court for
Cowlitz county, Kirby, J., entered May 10, 1926, in

[1]Reported in 255 Pac. 380.

favor of the plaintiff, in an action for damages for personal injuries. Affirmed.

*Bates & Peterson* and *Hayden, Langhorne & Metzger,* for appellant.

*E. H. Kohlhase* and *G. F. Vanderveer,* for respondent.

MACKINTOSH, C. J.—Near the city of Longview, the appellant constructed and maintained, on the property of a diking and drainage district, an electrical transformer and other appliances for reducing and stepping down the high voltage used by it for power in the operation of the district's pumps. The transformer consisted of a great number of wires highly charged with electricity. The pump-house and transformer abut upon a highly-traveled public road, and the high-tension wires were brought down vertically from the transmission line near the pump-house and were weather-proofed and had the appearance of an ordinary insulated wire.

On May 3, 1925, the respondent, who was a girl then nearly eighteen years of age, accompanied by her parents, went to the diking district's property near the pump-house for the purpose of fishing in the adjoining waters of the canal. Many fish were killed by passing through the pumps, so that the canal became a favorite fishing resort and many persons of all ages gathered there for that purpose; and in going and coming they passed within a few feet of the transformer, and the principal fishing was conducted within a hundred feet of it.

The respondent, having arrived at the pumphouse, proceeded along the concrete walk leading to its entrance and passed around its south side and to the north side of the dike, where she seated herself on a

rock and watched her parents fishing. After a brief interval, she decided to enter the enclosure surrounding the transformer, to look into the windows to see the pumps operating, and also for the purpose of finding a lavatory. An area-way, three or four feet wide and two and one-half feet deep, was between her and the windows of the pump-house, and in order to get a closer view of the interior, it appears that she must have taken hold of a truss-rod, leaned forward in such a way that her hair blew against one of the high-voltage wires and that this caused a short circuit which resulted in a current of 6,700 volts passing into her skull, resulting in permanent injuries, being a second-degree burn on the right hand and a third-degree burn in the right frontal portion of the skull, so that the bone was charred and afterwards a portion of it was removed by a physician, causing the brain tissue to protrude through the opening. As a result she is in a highly nervous and distressing condition. To recover damages for these injuries, this action was brought.

The testimony shows that the wires and transformer were attempted to be guarded by a woven wire fence, forming an enclosure twenty feet in width east and west, and forty feet in length. There were no posts on either the north or south side except the corner posts, and this twenty feet of wire span was not very taut; and under it on the north side was a hole, estimated to be from two and. one-half to four feet in depth, which permitted persons to pass under the wire and to enter the enclosure. A hole of nearly the same dimensions existed on the south, and on neither of these sides were there any warning signs indicating that there was any danger present. On the west side there was a sign which gave warning that the situation was dangerous. It was through one of these openings that the respond-

ent entered the enclosure and came in the proximity of the transformer.

[1] It is first emphatically urged that there was no evidence to justify any recovery against the appellant upon the theory that this was an action based upon the attractive nuisance doctrine. While it is true that the complaint made allegations which would bring the cause of action within that doctrine, yet the case was tried and the jury instructed upon the general theory of negligence; and, these instructions having been unobjected to by the appellant and in fact being as favorable as could have been asked for on the general theory of negligence, the fact—if it may be assumed to be a fact—that the situation presented is not one which comes within the theory of the attractive nuisance cases, is not a ground for granting the appellant's motions for non-suit, for a directed verdict, or for judgment notwithstanding the verdict. The great number of authorities cited to the point that a person of the age of this respondent can not receive the benefit of the attractive nuisance theory, need not be reviewed; for it is only material to consider whether there was sufficient evidence to go to the jury on the question of the appellant's negligence, and if there was, whether the respondent was as a matter of law guilty of contributory negligence.

[2] It first becomes necessary to consider whether the appellant must be charged with knowledge that persons might enter the enclosure for the purpose of inspecting the pumps or investigating the situation there; and it matters not whether the persons entering the enclosure did so by invitation, by license, or whether they were merely trespassers. There was sufficient evidence to show that the appellant must have known that young and old people were in the habit of congre-

gating in great numbers near this pump-house, and the jury were justified in believing that the appellant should have reasonably anticipated that young people especially might enter this enclosure through these holes, and that the appellant was guilty of negligence in failing to make the enclosure more secure, or in not placing a sufficient number of warnings to apprise the public of the danger lurking in the situation; and this is independent of the fact that by express statutory provision (Rem. Comp. Stat., § 5435, Rule 14) [P. C. § 3448], it is made obligatory upon the appellant to maintain certain safeguards around the wires and transformer.

Objection is made by the appellant to the consideration of the statute, for the reason that reliance was not placed upon this statute at the trial and for the first time a violation of this statute is being urged in the briefs as a ground of negligence. As we view it, there was sufficient proof of negligence, independent of the violation of this statute, to justify the submission of that question to the jury; and we therefore pay no attention here to the argument that, as a matter of law, the appellant was guilty of negligence. The duty which the owner of high-voltage electricity owes to all persons—whether invitees, licensees or trespassers—who it may have reason to believe may come into its proximity, is to guard them from injury resulting from the dangerous appliances; and it can not relieve itself from liability, even as against a trespasser, by showing that it merely refrained from inflicting wanton and wilful injury. Those handling these deadly instrumentalities are responsible for injuries due to their negligence, if they could have reasonably anticipated that someone might be injured by contact with them, and if they should have so anticipated, then they

must have guarded them, and this is independent of the question of attractive nuisance as applied to juveniles. *Graves v. Washington Water Power Co.,* 44 Wash. 675, 87 Pac. 956; *Kempf v. Spokane & Inland Empire R. Co.,* 82 Wash. 263, 144 Pac. 77; *Mathis v. Granger Brick & Tile Co.,* 85 Wash. 634, 149 Pac. 3; *Talkington v. Washington Water Power Co.,* 96 Wash. 386, 165 Pac. 87; *Burnett v. Ft. Worth Light & Power Co.,* 117 S. W. (Tex. Civ. App.) 175; *Union Light, Heat & Power Co. v. Lunsford,* 189 Ky. 785, 225 S. W. 741; *Ambroz v. Cedar Rapids Electric Light & Power Co.,* 131 Iowa 336, 108 N. W. 540; *Meyer v. Menominee & Marinette Light & Traction Co.,* 151 Wis. 279, 138 N. W. 1008; *Znidersich v. Minnesota Utilities Co.,* 155 Minn. 293, 193 N. W. 449; *Hayes v. Southern Power Co.,* 95 S. C. 230, 78 S. E. 956; *Schilling v. Abernethy,* 112 Pa. St. 437, 3 Atl. 792, 56 Am. St. 320. Many more authorities can be found to the same effect.

[3] We pass now to the consideration of the question of whether, as a matter of law, the respondent was guilty of contributory negligence. While it is true that this respondent was not a mere child, still it was a question of fact for the jury to determine whether she conducted herself as a reasonably prudent person would have under the circumstances. There is some testimony that she did not know what the effect of coming in contact with these wires was. The wires themselves gave no indication of their dangerous character. The jury may have believed that she was not guilty of negligence in entering the enclosure for the purpose she asserted, or in taking hold of the rod, and she could not anticipate that a few loose hairs on her head would come in contact with the wire and thus create a short circuit; and altogether the proper body

to pass upon the question of the reasonableness of her conduct was the jury and not the court.

[4] The appellant assigns error upon the refusal of the court to give three of its requested instructions. The first of these was properly refused for the reason that it placed the only duty upon the appellant to refrain from inflicting wilful or wanton injury, which was not a correct statement of the appellant's liability. The two following instructions, in so far as they state the correct rule of law, were fully covered by instructions given by the court in as clear and satisfactory language as could be requested, and one of them, having coupled with the correct instruction an improper statement of the law, was on that ground properly refused.

[5] The last assignment of error is that the verdict was excessive and the result of passion and prejudice. While the verdict is large, it does not indicate that it was the result of anything except an effort on the part of the jury to measure in money the suffering and injury which this respondent has and will endure. That she escaped with her life, borders on the miraculous; and that the life which she has remaining is one accompanied by constant torture, is apparent. There is no monetary recompense which will restore her to the condition in which she was on the Sunday morning that she entered the appellant's premises, and, not being able to say that the amount which the jury awarded her is too great, the judgment is therefore affirmed.

Fullerton, Main, Mitchell, and French, JJ., concur.