[No. 35145.    Department Two.    September 29, 1960.]

IRA BRANNON, *Individually and as Guardian ad Litem, Appellant,* v. D. B. HARMON *et al., Respondents.*[1]

[1]Reported in 355 P. (2d) 792.

*Pomeroy & Harris, Francis N. Cushman,* for appellants.

*Knapp & Knapp,* for respondents Olels.

*Brethorst, Fowler, Bateman, Reed & McClure (Frank Payne,* of counsel), for respondents Harmon.

FINLEY, J.—This is an action for personal injuries suffered by the plaintiff's infant son. On the afternoon of Saturday, July 20, 1957, the child, then three and one-half years of age, slipped and fell into a smoldering rubbish fire, located on a certain unimproved tract of land just north of Seattle. The defendants Harmon are the owners of the land upon which the accident occurred. Defendant Olels (whose wife was joined as an additional defendant merely to bind the marital community) is a contractor, who, at the time of the accident, was employed by the Harmons to clear and excavate the tract in order to facilitate its development as residential property. The smoldering debris into which the child fell was created by Olels as an incident to the clearing operation. During the weekdays, when work was in progress in the area, a fire was kept burning continuously in order to dispose of stumps, logs, and other similar materials. As the weekend holidays approached, the fire was not extinguished, but was allowed to die down; and, in order to keep it under control, the burning debris was mixed with and partially covered over by surrounding natural soil. It is undisputed that the area was left unguarded and unattended over the weekend period during which the accident occurred.

The theory of plaintiff's complaint is basically one of negligence; *i.e.*, that the defendants Harmon, as owners of the land, and the defendant Olels, as the contractor engaged to clear the land, owed to the injured child a duty to use reasonable care in conducting the debris-burning operation, and that this duty was breached when the fire was left burning and unattended over the weekend. Plaintiff concedes that, at the time of the accident, the child was technically a trespasser (toward whom a landowner or occupier ordinarily owes no duty except to refrain from wanton or willful harm). However, the plaintiff seeks to establish a duty of reasonable care by invoking the attractive-nuisance doctrine; (*i.e.*, an exception to the general rule relating to trespassers).

In the trial court the defendants (contending that the attractive-nuisance doctrine was not applicable under the facts involved in the instant case) moved for a summary judgment. Affidavits and depositions were submitted by each of the parties. The defendants' motion was granted, and the plaintiff's complaint was dismissed with prejudice. This appeal followed.

The test to be applied in ruling on a motion for summary judgment is concisely stated in Rule of Pleading, Practice and Procedure 56, RCW Vol. 0, as follows:

"(c) . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

The defendants-respondents have conceded that, because of the tender age of the injured child, the child is not chargeable with contributory negligence. The single question to be determined on this appeal is whether, on the basis of the facts in the record (pleadings, depositions and affidavits), it should be said, as a matter of law, that the attractive-nuisance doctrine is not applicable; *i.e.*, that the respondents, as a matter of law, owed no duty of reasonable care to the trespassing child.

■ The leading case in this jurisdiction relative to the attractive-nuisance doctrine is *Schock v. Ringling Bros. and Barnum & Bailey Combined Shows* (1940), 5 Wn. (2d) 599, 105 P. (2d) 838. In the *Schock* case the court commented in general terms regarding the doctrine as follows:

". . . That doctrine, which has been variously termed the 'attractive nuisance,' 'attractive agencies,' 'attractive instrumentalities,' 'torpedo,' or 'turntable' doctrine, may be generally stated thus: One who maintains or creates upon his premises, or upon the premises of another, or in any public place, an instrumentality or condition which may reasonably be expected to attract children of tender years, and to constitute a danger to them, is under a duty to take the precautions that a reasonably prudent person would take, under similar circumstances, to prevent injury to such children."

■ The court then reviewed a number of earlier decisions and therefrom derived a list of some five factual considerations, each of which was said to be a requisite for application of the attractive-nuisance doctrine in a given case. These considerations were enumerated as follows:

". . . (1) the instrumentality or condition must be dangerous in itself, that is, it must be an agency which is likely to, or probably will, result in injury to those attracted by, and coming in contact with, it; (2) it must be attractive and alluring, or enticing, to young children; (3) the children must have been incapable, by reason of their youth, of comprehending the danger involved; (4) the instrumentality or condition must have been left unguarded and exposed at a place where children of tender years are accustomed to resort, or where it is reasonably to be expected that they will resort, for play or amusement, or for the gratification of youthful curiosity; and (5) it must have been reasonably practicable and feasible either to prevent access to the instrumentality or condition, or else to render it innocuous, without obstructing any reasonable purpose or use for which it was intended."

■ In the light of the test to be applied on a motion for summary judgment, the trial court's ruling—granting the respondents' motion—must be taken as a determination that, on the basis of the pleadings, depositions and affidavits, at least one, and possibly more than one, of the five con-

siderations set forth in the *Schock* case is missing from the instant case. We cannot agree that such is the case for the following reasons:

1. It is undisputed that the condition in question was a fire. The inherent danger of fire cannot be doubted.

2. However, it was a concealed, rather than an open fire. According to respondent Harmon's own affidavit, "the fire had all burned down and only ashes remained." Appellant, in his affidavit, described the situation on the day of the accident as follows:

". . . the fire on the day in question was only showing intermittent flame but was smoking over a large area. The edges of the fire at that time had been stirred up and mixed with dirt so that the ashes on the perimeter presented a deceptively safe appearance."

Thus, the condition presented an appearance of smoke, arising, apparently, from the ground. Such a sight might well arouse the natural curiosity of young children with sufficient lure or enticement as to cause a young child to enter the area.

3. At the same time, whereas an *open* fire ". . . brings home to . . . [children] strongly the possibility of danger . . ." (*Clark v. Bremerton* (1939), 1 Wn. (2d) 689, 97 P. (2d) 112, holding that the attractive-nuisance doctrine is not applicable where injury is caused by contact with an open flame), a *concealed* fire has no such self-contained warning device. There is undoubtedly some truth in the old adage that, where there is smoke, there is fire, both literally and figuratively speaking; but we do not believe that a young child of the age of three and one-half years, such as the plaintiff's son, is to be charged, as a matter of law, with the knowledge of this danger.

4. It is undisputed that the smoldering, concealed fire was left unguarded on the day of the accident. There is ample indication in the record from the affidavits of several persons living in the area that the neighborhood children were accustomed to resort to the Harmon property, both before and after the clearing operation began, for the purpose of play. Further, there is evidence that this fact

was known to both defendants (although, in their own affidavits, both Harmon and Olels deny such knowledge).

5. The record contains conflicting statements relating to the feasibility of safeguarding the condition during the weekend period when no actual work was being done on the property.

It is, therefore, our conclusion that the factual record which was before the trial court on the defendants' motions for summary judgment discloses a situation respecting which it cannot be said that the defendants were entitled to judgment, as a matter of law. The ruling of the trial court granting a summary judgment to the defendants must be reversed, and the cause remanded for a trial on the merits. It is so ordered.

WEAVER, C. J., ROSELLINI, and FOSTER, JJ., concur.

HILL, J. (concurring specially)—I concur in the result. I have considerable doubt as to the applicability of the attractive-nuisance doctrine, but it seems to me that there was a case for the jury on the theory that the presence of small trespassers was to be anticipated, and there was a duty to protect them from a known danger. My views on this point have been recently stated in the concurring opinion in *Mills v. Orcas Power & Light Company* (1960), *ante* p. 807, 355 P. (2d) 781. See *Bronk v. Davenny* (1946), 25 Wn. (2d) 443, 171 P. (2d) 237; *Clark v. Longview Public Service Co.* (1927), 143 Wash. 319, 255 Pac. 380; and *Talkington v. Washington Water Power Co.* (1917), 96 Wash. 386, 165 Pac. 87.