[No. 11494–1–II.   Division Two.   August 17, 1988.]

RICHARD SMITH SIKKING, *Appellant,* v. THE NATIONAL RAILROAD PASSENGER CORPORATION, ET AL, *Respondents.*

*Carole E. Fisher* and *Paul N. Luvera, Jr.,* for appellant.

*Newell D. Smith* and *Kurt W. Kroschel,* for respondents.

PETRICH, J.—Richard Sikking appeals the trial court's summary judgment dismissing his action for negligence

show, as a condition precedent to obtaining an order vacating the default, that he has a meritorious defense.

against the National Railroad Passenger Corporation (NRPC). We affirm.

On August 26, 1984, an Amtrak passenger train was heading south toward Vancouver, Washington. As the train approached the 26th Street overpass in Vancouver, it was moving at approximately 45 m.p.h. Having seen transients active in the area on previous occasions, the train's engineer blew his whistle and sounded the bell approximately one-quarter of a mile away from the 26th Street overpass.

Approximately 300 to 400 feet away from the 26th Street overpass, the engineer saw a human body—Richard Sikking—lying across the tracks. Sikking was unconscious at the time. Upon sighting the body, the engineer applied the emergency brakes, but the train nevertheless struck Sikking. As a result of the accident, Sikking lost portions of both legs and suffered severe head injuries.

Sikking, upon his own admissions, had entered the property without permission for the purpose of "hopping a freight" from Vancouver to Seattle. Although the reasons for Sikking's presence on the tracks are unknown, there was evidence that he had been drinking earlier in the day.

█ Sikking concedes he was a trespasser and does not dispute that the law generally applied to trespassers provides that a landowner owes no duty to a trespasser, except to refrain from causing willful or wanton injury to him, *Ochampaugh v. Seattle,* 91 Wn.2d 514, 518, 588 P.2d 1351 (1979); and that in order to constitute a "willful and wanton injury," the act producing the injury must have been committed knowingly and intentionally, or must have been committed under such circumstances as to evince a reckless disregard for safety of the persons injured. *Bidlake v. Youell, Inc.,* 51 Wn.2d 59, 62, 315 P.2d 644 (1957). Applying these principles, the trial court concluded that there was no evidence of willful or wanton misconduct and granted summary judgment of dismissal.

Sikking contends that the trial court should have applied a reasonable care standard under the constant trespasser

doctrine found in section 334 of the Restatement (Second) of Torts (1965). Section 334 states:

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

Sikking submits that this doctrine should apply since the Railroad had knowledge of fairly constant activity by the transients in the vicinity of the Vancouver rail yard, the site of the accident. We disagree.

Although other states have adopted section 334, no Washington court has expressly done so to date. Sikking cites two older Washington cases which he claims set forth the general theory embodied in section 334. However, both of these cases can be distinguished from the more recent doctrine.

In *Hiatt v. Northern Pac, R.R.,* 138 Wash. 558, 244 P. 994 (1926), a pedestrian crossing a train track at a common footpath was struck by a rolling train car. In reversing the judgment in favor of the defendant railroad, the Supreme Court cited numerous out–of–state cases that applied a negligence standard to accidents involving trespassers. However, the court ultimately concluded that the issue was whether the railroad's actions amounted to wanton misconduct. *Hiatt,* 138 Wash. at 561. The Supreme Court did not apply a mere negligence standard to the railroad's duty of care with regard to trespassers.

In another case cited by Sikking, *Clark v. Longview Pub. Serv. Co.,* 143 Wash. 319, 255 P. 380 (1927), the Supreme Court adopted a negligence standard where a trespasser was injured by unmarked high voltage wires. In *Clark,* the owner of the premises knew that many people were in the habit of entering the property and congregating near a pump–house enclosure guarding high voltage wires. A 17–year–old girl, while attempting to get a closer look at the

pump house, brushed up against two high voltage wires, resulting in serious injuries. The court concluded that:

[I]t matters not whether the persons entering the enclosure did so by invitation, by license, or whether they were merely trespassers. There was sufficient evidence to show that the appellant must have known that young and old people were in the habit of congregating in great numbers near this pump–house, and the jury was justified in believing that the appellant should have reasonably anticipated that young people especially might enter this enclosure through these holes, and that the appellant was guilty of negligence in failing to make the enclosure more secure, or in not placing a sufficient number of warnings to apprise the public of the danger lurking in the situation . . .

*Clark,* 143 Wash. at 322–23. Although the court applied a duty of reasonable care to a trespasser in *Clark,* there appears to be a distinguishing factor. In *Clark,* the court focused on the type of instrumentality involved. The court stated that:

[t]hose handling these deadly instrumentalities [high voltage wires] are responsible for injuries due to their negligence, if they could have reasonably anticipated that someone might be injured by contact with them, and if they should have so anticipated, then they must have guarded them . . .

*Clark,* 143 Wash. at 323–24. The court in *Clark* relied on numerous cases from other jurisdictions regarding the proper handling of electrical power lines. Furthermore, the rule in *Clark* has not been applied to any instrumentality outside of the handling of high voltage power lines. Therefore, it would be inappropriate to infer the court's acceptance of the constant trespasser doctrine solely on the basis of the holding in *Clark.*

Since no Washington court has adopted section 334 of Restatement (Second) of Torts, the trial court properly concluded that the Railroad's duty was limited to a willful and wanton misconduct standard. Although other jurisdictions have done so, the Washington Supreme Court has

250

refused routinely to abrogate the common law distinctions between invitee, licensee, and trespasser. *See Younce v. Ferguson*, 106 Wn.2d 658, 724 P.2d 991 (1986). Therefore, we are not inclined to blur this area of the law by adopting the constant trespasser doctrine.

The Railroad argues that the recreational use statute, RCW 4.24.210, which limits the liability of the owner or occupier for injuries to recreational users of such lands, precludes liability in this case. In light of our decision regarding the duty owed a trespasser, we decline to address the Railroad's argument.

Judgment affirmed.

REED, C.J., and WORSWICK, J., concur.