[No. 20575-1-II. Division Two. April 25, 1997.]
KARLEEN SINGLETON, *Appellant*, v. ZOE JACKSON, ET AL., *Respondents*.

836

*Todd W. Simpson,* for appellant.
*Terrance D. Hannan* and *Wolfe Mullins Hannan & Mercer,* for respondents.

SEINFELD, J. — Karleen Singleton, a Jehovah's Witness, slipped and fell on the front porch of a house owned by Zoe Jackson. Singleton brought a premises liability action against Jackson, alleging that she had breached the duty of care owed to a licensee. The superior court dismissed the action on summary judgment, holding that Singleton was a trespasser and that Jackson had not breached the corresponding duty of care. We disagree, concluding that Jackson was a licensee. Nonetheless, we find no breach of duty by Jackson. Accordingly, we affirm.

In the fall of 1993, Singleton approached a house owned by Jackson, intending to engage in religious solicitation. The house appeared to Singleton to be a residence, but Jackson did not then live there full-time. Rather, Jackson's son and daughter-in-law, Hugh and Patricia Colson, used one bedroom of the house as an office for their business.

The approach to the front of the house led up three steps to a wooden deck. From the top of the steps, the front door was to the left, while immediately ahead was a sliding glass door to a bedroom used by the Colsons as an

office. Strips of asphalt shingle roofing material had been stapled to the deck creating pathways to both doors, and a mat was laid in front of the sliding glass door.

As Singleton and her companion went up the steps, they saw Patricia Colson through the sliding glass door to the bedroom office. Colson met them at the sliding door, explained that the house was used for business, and stated that she did not wish to speak with them. As Singleton turned from the door to leave, she stepped off the shingle pathway on to the deck's bare wood and slipped and fell, injuring herself.

A week later, Singleton returned to the house and took a closer look at the deck's surface. At first, she thought that the bare part of the deck was simply "weathered." Upon touching the surface, however, she realized that this wood was "slimy," as though covered with "algae."

In support of her motion to dismiss Singleton's lawsuit, Jackson argued in the alternative that (1) Singleton was a trespasser and there had been no breach of the corresponding duty of care, and (2) that Jackson did not breach the standard of care owed to a licensee. The summary judgment court relied upon only the first alternative in dismissing the complaint.

On appeal, Singleton argues that the superior court erred when it applied the standard of care owed a trespasser. She also argues that the trial court's conclusion that she was a trespasser conflicts with state and federal constitutional guaranties protecting the right to free exercise of religion.

## DISCUSSION

### Standard of Review

■ When reviewing an order for summary judgment, this court conducts the same inquiry as the trial court. *Sherman v. State*, 128 Wn.2d 164, 183, 905 P.2d 355 (1995). We will affirm a summary judgment if there are no genuine issues of material fact and the moving party is entitled

to judgment as a matter of law. CR 56(c); *Sherman*, 128 Wn.2d at 183. All facts and reasonable inferences are considered in the light most favorable to the nonmoving party; all questions of law are reviewed de novo. *Sherman*, 128 Wn.2d at 183.

## Singleton's Status

 A possessor of land owes a higher duty of care to a licensee than to a trespasser. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994); *compare* RESTATEMENT (SECOND) OF TORTS § 333 (duties generally owed to a trespasser), *with* § 342 (duties generally owed to a licensee). A "trespasser," for purposes of premises liability, is one " 'who enters the premises of another without invitation or permission, express or implied, but goes, rather, for his own purposes or convenience, and not in the performance of a duty to the owner or one in possession of the premises.' " *Winter v. Mackner*, 68 Wn.2d 943, 945, 416 P.2d 453 (1966) (quoting *Schock v. Ringling Bros. & Barnum & Bailey Combined Shows*, 5 Wn.2d 599, 605, 105 P.2d 838 (1940)), *overruled on other grounds*, *Potts v. Amis*, 62 Wn.2d 777, 384 P.2d 825 (1963). A "licensee," on the other hand, is " 'a person who is privileged to enter or remain on land only by virtue of the possessor's consent.' " *Tincani*, 124 Wn.2d at 133 (quoting RESTATEMENT (SECOND) OF TORTS § 330). Thus, the determination of whether a person is a trespasser or a licensee hinges on whether the possessor has granted consent or permission to enter the property.

 The possessor of property may consent to a licensee's entry through conduct, omission, or by means of local custom, as well as through oral or written consent.[1]

---

[1]Given the numerous means by which a possessor may expressly or tacitly consent to entry, the factual situations in which persons have been found to be licensees is extensive and includes:

"[T]hose taking short cuts across the property or making merely permissive use of crossings and ways or other parts of the premises; loafers, loiterers, and people who come in only to get out of the weather; those in search of

*See* RESTATEMENT (SECOND) OF TORTS § 330, cmts. b, c, d, e. The courts of this state have not directly spoken to the issue of when a possessor of land has impliedly consented to a stranger approaching the front entry of a private residence. Several jurisdictions, however, have recognized such consent or permission for a stranger to approach the front entrance and attempt to make contact with the occupant, unless the possessor expressly communicates otherwise. *Jones v. Manhart,* 120 Ariz. 338, 341, 585 P.2d 1250, 1253 (Ct. App. 1978); *Prior v. White,* 132 Fla. 1, 19, 180 So. 347, 355, 116 A.L.R. 1176 (1938); *City of Osceola v. Blair,* 231 Iowa 770, 773-74, 2 N.W.2d 83, 85 (1942); *Smith v. VonCannon,* 283 N.C. 656, 663, 197 S.E.2d 524, 529 (1973). Notice that consent has been withdrawn can be accomplished in a variety of ways, including the posting of a "No Trespassing" or "No Solicitation" sign.

Comment "e" of the RESTATEMENT (SECOND) OF TORTS § 330 explains the rationale underlying this rule:

> The consent which is necessary to confer a license to enter land, may be expressed by acts other than words. Here again the decisive factor is the interpretation which a reasonable [person] would put upon the possessor's acts. Thus one who constructs and opens a roadway across his land for the benefit of his friends and neighbors may thereby express his willingness to permit the entry of strangers who wish to cross the land, unless he posts a notice to the contrary; and this is true although the possessor in fact intends to permit the entry only of particular individuals.

Applying this rationale, several courts have observed that strangers approaching a private residence may rea-

their children, servants or other third persons; spectators and sightseers not in any way invited to come; those who enter for social visits or personal business dealings with employees of the possessor of the land; tourists visiting a plant at their own request; those who come to borrow tools or to pick up and remove refuse or chattels for their own benefit; salesmen calling at the door of private homes, and those soliciting money for charity; a stranger entering an office building to post a letter in a mail-box provided for the use of tenants only."

W. PAGE KEETON ET. AL., PROSSER AND KEETON ON THE LAW OF TORTS § 60, at 413 (5th ed. 1984) (footnotes omitted).

sonably interpret the presence of a doorbell or a pathway leading to the front door as tacit consent to approach the residence and attempt to contact its occupants. *See Breard v. City of Alexandria, La.*, 341 U.S. 622, 626, 71 S. Ct. 920, 95 L. Ed. 2d 1233, 35 A.L.R.2d 335 (1951) ("the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds of salable articles") (citing RESTATEMENT OF THE LAW OF TORTS § 167 (1936)); *Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975) (presence of knocker or bell on a door constitutes license to enter premises) (citing *Breard*, 341 U.S. at 626 and 60 AM. JUR. 2D, *Peddlers, Solicitors and Transient Dealers* § 57 (1972)); *VonCannon*, 283 N.C. at 662, 197 S.E.2d at 529 ("construction of a driveway or walkway leading to the entrance of a residence may, in the absence of notice to the contrary, be reasonably construed . . . as an expression of the landowner's consent to . . . entry thereon for the purpose of approaching and entering the house on any lawful mission"). Accordingly, courts from other jurisdictions have regularly concluded that door-to-door solicitors are licensees, as opposed to trespassers or invitees.

While no Washington court has specifically held that door-to-door solicitors, like Singleton, qualify as licensees in a premises liability context,[2] the court in *Konick v.*

---

[2]Note, however, that, Washington courts reviewing criminal search and seizure issues have recognized that the public has implied consent to approach a private residence along established access routes. *State v. Rose*, 128 Wn.2d 388, 392, 909 P.2d 280 (1996); *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981). Numerous cases discussing the open view doctrine have observed that walkways and porches leading to the front entrance of a private residence are generally understood to be open to the public and, therefore, a police officer's warrantless entry or search of these areas does not offend the occupant's right to privacy. *See Rose*, 128 Wn.2d at 392-93 (in absence of a fence or a sign prohibiting entry, police officer had implied consent from the home owner to walk up to the porch of a mobile home located at the end of a private way); *State v. Myers*, 117 Wn.2d 332, 344, 815 P.2d 761 (1991) ("a front porch or normal access to a house is not a constitutionally protected area, and police officers who enter these areas may do so with their eyes open"); *Seagull*, 95 Wn.2d at 902 ("It is clear that police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house." (footnote omitted)).

*Champneys*, 108 Wash. 35, 183 P. 75, 6 A.L.R. 459 (1919) recognized as much in dicta. The *Konick* court observed that "a peddler or solicitor, or a person seeking a purchaser for something he had to sell" does not qualify as an invitee. 108 Wash. at 40. "Such persons . . . are mere licensees, and their right of entry is subject to be revoked by the owner at any time and for any cause that may seem to the owner sufficient." 108 Wash. at 40. These observations are consistent with comment "b" of the RESTATEMENT (SECOND) OF TORTS § 332 (1965), which implicitly recognizes that a door-to-door solicitor remains a licensee, until such time as the possessor accepts the solicitor's invitation to transact further business.

We adopt this analysis here. Singleton testified that she entered the premises through an open driveway leading to the deck and the front door. There was no evidence that Jackson or the Colsons notified her by posting signs or by installing physical barriers that she was not welcome. Thus, it was reasonable for Singleton to believe that she had permission to approach the front door of the house and attempt to contact its occupants. Although there was a small sign directing persons entering from the driveway to the "Office," at most, this sign would place a person on notice that some commercial activity was taking place on the premises. Standing alone, it cannot be construed as a withdrawal of permission to enter. *Cf. Manhart*, 120 Ariz. at 341, 585 P.2d at 1253 (canvasser was a licensee, as sign posted in front of house, " 'Trespassers will be eaten,' could be reasonably interpreted as a joke"). Accordingly, we find that Singleton was a licensee, not a trespasser, and that the trial court erred when it concluded otherwise.[3]

## Duty to a Licensee

█ Having determined that Singleton was a licensee, we turn to the remaining question: Did Jackson breach

---

[3]As we have resolved this issue based on nonconstitutional grounds, we do not address Singleton's state and federal constitutional arguments. An appellate court will not reach a constitutional claim if it is not necessary to resolve the issue at hand. *State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992).

the applicable duty of care? Although neither party addresses this issue in her appellate briefs, we take notice that Jackson argued the issue below. Thus, we consider it. *See Tropiano v. City of Tacoma*, 105 Wn.2d 873, 876, 718 P.2d 801 (1986) (appellate court has authority to review all theories argued before the trial court, provided they are supported by the evidence and the pleadings).

The possessor of land[4] is liable for injuries to a licensee caused by a condition on the land only if:

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he [or she] fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

*Tincani,* 124 Wn.2d at 133 (quoting RESTATEMENT (SECOND) OF TORTS § 342). A rationale for premises liability is that the possessor of the land's knowledge of the condition and risk is superior to that of the licensee. *Daly v. Lynch*, 24 Wn. App. 69, 77, 600 P.2d 592 (1979). The possessor, however, does not owe a licensee an affirmative duty to seek out hidden dangers. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 49, 914 P.2d 728 (1996).

Assuming, without deciding, that a slippery wood deck is a hidden dangerous condition, we reject Singleton's

---

[4]The RESTATEMENT defines "possessor of the land" as:

"(a) a person who is in occupation of the of land with intent to control it or

"(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

"(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

RESTATEMENT (SECOND) OF TORTS § 328E; *Jarr v. Seeco Constr. Co.*, 35 Wn. App. 324, 327, 666 P.2d 392 (1983). This raises the question of whether Jackson is an appropriate defendant, as it was her daughter-in-law, Patricia Colson, who actually possessed the house at the time of the accident.

claim because the record, viewed in the most favorable light to Singleton, does not raise a genuine issue of material fact with regard to whether Jackson knew or should have known about the condition. Jackson indicated in her affidavit that she had never slipped on this section of deck and had no recollection of anyone else ever slipping, prior to Singleton's accident. Patricia Colson testified that she always used the asphalt shingle path and that she had never received a complaint that the exposed wood was slippery. Hugh Colson offered similar testimony.

Singleton argues that she raised a genuine issue of material fact regarding the Colsons' knowledge of the allegedly hidden defect. She claims that there is evidence that Hugh Colson stated that he knew that the deck was dangerous when wet. Singleton couples Hugh Colson's alleged admission with Patricia Colson's observation that the wood looked aged and her own contention that, upon her return a week later, she found that the wood was "covered with a slimy algae that made the deck look aged and slippery when wet."

This argument fails for several reasons. First, the issue here is whether Jackson, the sole defendant in this case, knew about the hidden danger. Singleton does not offer any evidence showing that the Colsons shared any knowledge they may have had with Jackson. Thus, we do not see any materiality to evidence of what the Colsons knew or should have known.

Second, even assuming that the Colsons' knowledge was relevant, Hugh Colson did not admit knowledge. He stated in his deposition that he did not recall whether the bare wood portion of the deck was slippery when wet, although he acknowledged that it "may have been." When asked whether he believed that the deck posed a slipping danger to persons approaching the house, Colson responded, "Not if you stayed on the area that was meant to be walked on [with the roofing]." At most, Colson acknowledged the possibility that the bare wood might be slippery if wet.

The remaining evidence cited by Singleton—that Patri-

cia Colson and Singleton both observed that the wood looked old and Singleton's testimony that the wood was slimy to the touch—adds little. Patricia Colson's acknowledgment that the wood looked old is not synonymous with knowledge that the wood was dangerously slippery. Singleton's observations made a week after the accident are simply not relevant to the issue of Jackson's knowledge.

In sum, we find that Singleton was a licensee, but applying the standard of care owed a licensee, we find that Singleton has failed to raise a genuine issue of material fact concerning Jackson's actual or constructive knowledge of the alleged dangerous condition. Accordingly, we affirm the trial court's summary dismissal of the action.

HOUGHTON, C.J., and HUNT, J., concur.

Reconsideration denied June 3, 1997.