# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMY BIGGS, | No. 85010-5-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| PUGET SOUND ENERGY, INC., a Washington public utility corporation, | |
| Respondent. | |

FELDMAN, J. — Amy Biggs (Biggs) appeals from a trial court's summary judgment order dismissing her premises liability claim against Puget Sound Energy (PSE). Finding no error, we affirm.

I

Biggs and her husband were staying at the Salish Lodge (Lodge) on November 24, 2018. Around 8 p.m., after having dinner at the Lodge, Biggs and her husband walked to the Snoqualmie Falls Park (Park), which is next to the Lodge, to view Snoqualmie Falls. When they entered the Park, they passed a sign, which PSE had posted, stating "PARK CLOSED DUSK TIL DAWN." They then continued down a stairway, along the pathway, and past another sign, also posted by PSE, which likewise stated "PARK CLOSED DUSK TIL DAWN." After

passing the second sign, Biggs proceeded down a second stairway where she fell. Biggs suffered a serious injury (a tibial plateau fracture), requiring surgery.

Biggs sued PSE as the owner of the premises and claimed PSE "negligently failed to maintain the pedestrian area in a reasonably safe condition." PSE filed a motion for summary judgment asserting that it "did not owe [Biggs] a duty of ordinary care at the time of her fall because she was a trespasser as a matter of law." Biggs opposed the motion and asserted that she was not a trespasser when she fell because PSE "impliedly gives permission" for the "public to enter the Park to view the Falls at night." To support that argument, Biggs asserted, among other things, that the pathway was open to the public, PSE maintains lights along the path and illuminates Snoqualmie Falls after dark, and PSE had not installed any chains, gates, or other devices prohibiting access to the Park even though it knows that visitors enter the Park after dusk.

The trial court granted PSE's motion. The court ruled that Biggs was "trespassing when she entered the park because there were signs informing her the park was closed. She walked by those signs. Because she was trespassing, PSE owed her no duty, except to refrain from [causing] willful and wanton injury to her. Plaintiff does not allege those occurred." Biggs appeals.

II

We review summary judgment rulings de novo. *Werlinger v. Clarendon Nat'l Ins. Co.*, 129 Wn. App. 804, 808, 120 P.3d 593 (2005). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

law. CR 56(c). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Ghodsee v. City of Kent*, 21 Wn. App. 2d 762, 768, 508 P.3d 193 (2022). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. *Welch v. Brand Insulations, Inc.*, 27 Wn. App. 2d 110, 114, 531 P.3d 265 (2023).

Under Washington law, landowners owe no duty to trespassers "except to refrain from causing willful or wanton injury." *Sikking v. Nat'l R.R. Passenger Corp.*, 52 Wn. App. 246, 247, 758 P.2d 1003 (1988). Because there is no evidence or argument that PSE caused willful or wanton injury to Biggs, the dispositive issue here is whether Biggs was a trespasser at the time of her injury. The record shows without dispute that at the time of her injury Biggs was walking on a trail that was open to the public and fell down a stairway that was also open to the public. In that narrow sense (ignoring any posted notice to the contrary), Biggs was on PSE's property with its consent. *See Singleton v. Jackson*, 85 Wn. App. 835, 839-40, 935 P.2d 644 (1997) (possessor of property may consent to entry through conduct, by omission, or by means of local custom, as well as through oral or written consent).

But such consent can be withdrawn in a variety of ways, including by posting a sign. We have adopted Comment "e" of the Restatement (Second) of Torts § 330 (Am. Law Inst. 1965), which squarely addresses that issue. *See Singleton*, 85 Wn. App. at 839. It states:

3

> The consent which is necessary to confer a license to enter land, may be expressed by acts other than words. Here again the decisive factor is the interpretation which a reasonable [person] would put upon the possessor's acts. Thus one who constructs and opens a roadway across his land for the benefit of his friends and neighbors may thereby express his willingness to permit the entry of strangers who wish to cross the land, *unless he posts a notice to the contrary*; and this is true although the possessor in fact intends to permit the entry only of particular individuals.

RESTATEMENT (SECOND) OF TORTS § 330 cmt. e (emphasis added). The *Restatement* thus confirms that while consent may be communicated in numerous ways—including by conduct or omission—it may also be withdrawn by posting notice to the contrary.

Division Two's opinion in *Singleton* is in accord with these legal principles. The court there addressed whether Singleton, a Jehovah's Witness, was a trespasser when she slipped and fell on the front porch of a house owned by Jackson and part of which the Colsons (Jackson's son and daughter-in-law) used as a business office. 85 Wn. App. at 837. In addition to adopting the legal principles set forth in the *Restatement*, as recited above, the court reiterated, "A 'trespasser,' for purposes of premises liability, is one 'who enters the premises of another without invitation or permission, express or implied, but goes, rather, for his own purposes or convenience, and not in the performance of a duty to the owner or one in possession of the premises.'" *Id.* at 839 (quoting *Winter v. Mackner*, 68 Wn.2d 943, 945, 416 P.2d 453 (1966)). The court ultimately concluded that Singleton was *not* a trespasser at the time of her injury, in part, because "[t]here was no evidence that Jackson or the Colsons notified her by posting signs . . . that she was not welcome." *Id.* at 842.

4

Here, the record shows, without dispute, that PSE provided the requisite notice by posting signs that Biggs was not welcome in the Park at the time of her injury because the Park was "CLOSED DUSK TIL DAWN." While PSE posted such signs throughout the Park (and similar information can be found in publicly accessible websites and PSE's filings with the Federal Energy Regulatory Commission), *Singleton* focuses the inquiry on notice to the alleged trespasser. *See* 85 Wn. App. at 842 (examining whether Jackson or Colsons "notified [Singleton] by posting signs"). Biggs walked past two such signs before her fall. The signs are clear, unobstructed, and next to the path, and a reasonable person would interpret these signs as notice of PSE's intent to prohibit visitors from entering or remaining in the Park from dusk to dawn. And it is also undisputed that Biggs entered the Park after dusk (at approximately 8 p.m. in the month of November). As such, reasonable minds can reach but one conclusion from the admissible facts in evidence, which is that Biggs did not have PSE's consent to be in the Park—and was therefore a trespasser—at the time of her injury.

Notwithstanding the foregoing analysis, Biggs argues that the "signs are small, cluttered among other signs, and are not conspicuous," she "did not see" the signs as she and her husband walked along the path, and "whether the signs provide an adequate warning is a question of fact precluding summary judgment." These arguments fail because the applicable test is an objective one: "the decisive factor is the interpretation which a *reasonable [person]* would put upon the possessor's acts." RESTATEMENT (SECOND) OF TORTS § 330 cmt. e (emphasis added). Washington courts have similarly held that when applying the

5

reasonable person standard to a plaintiff's conduct, "'the inquiry is whether or not [the plaintiff] exercised that reasonable care for [their] own safety which *a reasonable [person] would have used under the existing facts and circumstances.'" *Dunnington v. Virginia Mason Med. Ctr.*, 187 Wn.2d 629, 637-38, 389 P.3d 498 (2017) (emphasis added) (quoting *Rosendahl v. Lesourd Methodist Church*, 68 Wn.2d 180, 182, 412 P.2d 109 (1966)).  Applying an objective standard of reasonableness based on consideration of all the existing facts and circumstances—including the content, visibility, and placement of the signs that Biggs admittedly walked past before her fall—no reasonable juror could conclude that Biggs had PSE's permission to enter or remain on its property at the time of her injury.[1]

Lastly, Biggs argues that the following evidence shows that PSE either "impliedly consent[ed]" or "negligently induced" her to believe she had permission to enter the park: (1) there is a contiguous paved pathway from the Lodge to the Park that does not give any indication of separate ownership of the two properties; (2) there are no barriers on the pathway between the Lodge property and the PSE property along the walkway; (3) PSE illuminates the paved pathway to the observation deck where guests can view Snoqualmie Falls; and (4) PSE is aware that the guests who stay at the Lodge visit the Park at night to view the

---

[1] Additionally, even if Biggs's subjective perspective were relevant here, the record does not support her assertion that she "did not see" the signs as she and her husband walked along the path.  Biggs did not testify that she never saw a "PARK CLOSED DUSK TIL DAWN" sign posted by PSE, but rather that "I don't recall seeing it."  Biggs also testified that she visited the Park "over 20 times" before her fall, and she admitted that she saw a sign indicating "no drone or UAV flying allowed," which is similar in size and placed in close proximity to the "PARK CLOSED DUSK TIL DAWN" sign that she walked past prior to her fall.

falls, which PSE illuminates.  Even when this evidence is viewed in the light most favorable to Biggs, it does not show that a *reasonable person* could properly conclude that they had PSE's permission to enter or remain on its property after dusk and before dawn despite walking past two of PSE's prominently posted signs stating "PARK CLOSED DUSK TIL DAWN."[2]

III

The trial court correctly ruled that Biggs was a trespasser at the time of her injury and, as a result, correctly granted summary judgment in PSE's favor. We affirm.[3]

_Feldman, J._

WE CONCUR:

_Chung, J._                    _Coburn, J._

---

[2] Biggs also argues that even if she were a trespasser, under the "constant trespasser doctrine" landowners owe a duty to warn trespassers of known, artificial, latent, and dangerous conditions.  Washington has not adopted the "constant trespasser" exception to the general rule of trespass. *Sikking*, 52 Wn. App. at 248-49.  Nevertheless, Biggs argues that our Supreme Court's decision in *Clark v. Longview Public Service Co.*, 143 Wn. 319, 255 P. 380 (1927), permits us to adopt this exception.  Biggs overlooks or ignores the portion of the opinion that narrows its analysis to possessors of land containing "high-voltage electricity" where the possessor may have reason to believe trespassers "may come into its proximity." *Id.* at 323. Because no such facts are presented here, we reject this argument.

[3] The trial court also ruled, in the alternative, that the recreational use immunity statute (RCW 4.24.210) applies to PSE and immunizes it from this lawsuit.  Because we agree with the trial court that Biggs was a trespasser when she suffered her injury, we do not reach the immunity issue.