[No. 46762. En Banc. December 18, 1980.]

ROBERT L. ARNOLD, ET AL, *Petitioners,* v. ROY C. LAIRD, ET AL, *Respondents.*

*Schroeter, Goldmark & Bender,* by *James D. Hailey* and *Paul W. Whelan,* for petitioners.

*Donald D. Skinner,* for respondents.

STAFFORD, J.—This case is concerned with common law liability of the owner of an animal which injures a person. The Court of Appeals held there was no negligence cause of action. We affirm.

The Arnolds, plaintiffs, and the Lairds, defendants, were neighbors. Debrah Arnold climbed on the cyclone fence which separated their yards. Blanket, the Lairds' Great Dane, ran to the fence and either bit or clawed at Debbie's face causing disfiguring injuries.

Insofar as pertinent, plaintiffs' complaint read:[1]

On or about the 17th day of May, 1976, the dog owned by the defendants attacked said Debrah Arnold. Such animal was known to have vicious propensities and the dog bite attack and resultant injuries were caused by the negligence of the defendants.

As a result of the aforesaid negligent [sic] of the defendants, said Debrah Arnold suffered severe lacerations of the face and head requiring medical treatment and surgical procedures causing damages to the *plaintiff parents* and the *plaintiff child . . .*

(Italics ours.) At the beginning of trial, both parties and the court agreed the real issue was whether the dog had "vicious propensities" and whether these were known or should have been known by her owners. Consequently, the cause proceeded to trial on the basis of "strict liability". No mention was made of a negligence cause of action. Defendants were thus prevented from attempting to prove contributory negligence by plaintiff parents.[2]

The trial dealt mainly with whether Blanket had "dangerous" and "vicious tendencies". Plaintiffs point to several incidents in which Blanket was alleged to have jumped up on other children or "mouthed" them. Defendants, on the other hand, attempted to show the insubstantiality of the asserted incidents. Plaintiffs also produced evidence of what they claimed was inadequate housing and feeding of Blanket and of teasing by children due to inadequate supervision. Defendants also disputed this.

---

[1]Plaintiffs did not claim statutory liability under RCW 16.08.040 *et seq.*

[2]Debrah, being only 4 years of age, was not capable of contributory negligence as a matter of law. *Cox v. Hugo*, 52 Wn.2d 815, 329 P.2d 467 (1958).

Near the end of the trial plaintiffs for the first time attempted to inject a negligence theory by means of supplemental jury instructions. The trial judge refused to instruct on the newly advanced theory on two alternate grounds: (1) the negligence theory was subsumed by the "strict liability" theory and did not exist independently; and (2) no actionable negligence was established. The jury found, by special verdict, that Blanket did not have dangerous tendencies and judgment was entered for defendants.[3]

The starting place for any discussion of common law liability concerning dogs is *Johnston v. Ohls*, 76 Wn.2d 398, 457 P.2d 194 (1969). *Johnston* holds that one who keeps a dog and who knows or reasonably should know the dog has vicious or dangerous propensities likely to cause the injury complained of is liable for injuries caused by the dog regardless of negligence by either the keeper or the injured person. Regarding negligence, we quoted from *Brewer v. Furtwangler*, 171 Wash. 617, 620, 18 P.2d 837 (1933): "The ground of liability in an action for injuries caused by a vicious dog is not negligence in the ordinary sense; hence, in its ordinary meaning, contributory negligence is not a defense." *Johnston v. Ohls, supra* at 401.

*Johnston* makes it clear it is irrelevant how a dog becomes abnormally dangerous, *i.e.,* whether it happens intentionally, through negligence, or merely through a dog's heredity. *Johnston* also makes it clear that evidence of contributory negligence (in its ordinary sense) is also irrelevant in an action based upon "strict liability". This is not to say, however, that negligence is never an issue in an action pertaining to injury by an animal. *Johnston* did not hold there cannot be both an action based upon negligence and one based upon common law "strict liability". They are

---

[3]At the end of the trial plaintiffs withdrew the issue of "vicious propensities". We need not decide whether "dangerous tendencies" without "vicious propensities" is enough to impose strict liability as this was not assigned as error.

not mutually exclusive. *See Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 531, 452 P.2d 729 (1969) (product liability).

The Restatement (Second) of Torts (1977) recognizes two separate causes of action regarding injury caused by animals. First, according to section 509, if the dog has known dangerous propensities abnormal to its class, the owner is *strictly liable.* Second, section 518 provides that if there are no known abnormally dangerous propensities, the owner is liable only if he is *negligent* in failing to prevent the harm. The amount of care required is commensurate with the character of the animal. Comment *f*, § 518.

■ Plaintiffs cite three cases which apply the latter theory: *Westberry v. Blackwell,* 282 Ore. 129, 577 P.2d 75 (1978); *Nelson v. Hansen,* 10 Wis. 2d 107, 102 N.W.2d 251 (1960); and *Baley v. J.F. Hink & Son,* 133 Cal. App. 2d 102, 283 P.2d 349 (1955). These cases as well as the Restatement (Second) of Torts, cited above, make it clear a negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen.

■ In this case, however, the only alleged negligence demonstrated by plaintiffs was confined to claimed deficiencies in maintenance and control which allegedly resulted in a dangerous animal. It cannot be said, however, that the inadequate housing, the feeding of Blanket, or prior teasing by children who ran sticks along the fence, proximately caused the injury to Debrah. Insofar as negligence is concerned, plaintiffs did not show that the owners failed to assert the type of control which a reasonable person would exercise under the attendant circumstances. Further, it is not per se unreasonable to keep a dog in a fenced backyard if the animal has not exhibited dangerous

tendencies. Since plaintiffs did not present substantial evidence of negligence which proximately caused the claimed injuries, the trial court correctly refused to instruct on that theory.[4] Cf. *Shasky v. Burden,* 78 Wn.2d 193, 195, 470 P.2d 544 (1970).

Plaintiffs next assign error to the jury's observation of Blanket during the trial. Defendants provided a foundation for the observation by introducing testimony that her feeding and care had not been altered, that she had not received any obedience training, and that she looked much the same. The parties' expert witnesses disagreed over how much the passage of time and having had a litter of puppies would have altered her appearance and disposition. The question of change or lack thereof thus became a question for the jury based upon conflicting evidence.

The jury members were permitted to see the dog on the courthouse lawn after the trial judge had instructed them concerning their expected conduct. Blanket was on a leash held by her master, defendant Sergeant Laird. Initially she was being petted by a stranger. She then approached the jurors, eventually getting within a few feet of some of them. Throughout this time she was apparently well behaved.

When the issue in dispute is the dog's condition and demeanor, *i.e.,* whether it is "dangerous" or not, showing the dog to the jury could, in some cases, be the most probative evidence available. It would be similar to exhibiting a plaintiff's scar and an observation of her demeanor as she testified to the pain and suffering it caused her. Given a proper foundation to support the assertion that there was a similarity of conditions on the date of the incident and the

---

[4]Even if plaintiffs had shown substantial evidence of negligence proximately causing the injury, instruction on that theory would have been improper. Plaintiffs having elected before trial to employ the theory of "strict liability" and both parties having proceeded on that basis throughout the trial, defendants would have been effectively denied an opportunity to meet the later injected theory of negligence or to attempt to establish contributory negligence by any plaintiff. If both theories had been properly advanced by plaintiff, it would have been proper to instruct on the relevance of negligence and contributory negligence. This was not done, however.

date of observation, there is no reason why observation of the animal necessarily should have been forbidden.

Inasmuch as the trial court initially determined there was a substantial similarity of conditions, it was within the trial court's sound discretion to allow the observation. We find no abuse.

The observation in this case was not, strictly speaking, a jury "view". *Cf. Sauls v. Scheppler,* 57 Wn.2d 273, 278, 356 P.2d 714, 85 A.L.R.2d 506 (1960); *Riblet v. Ideal Cement Co.,* 54 Wn.2d 779, 345 P.2d 173 (1959). Views are generally of real property and are authorized by statute. *See, e.g.,* RCW 4.44.270 (view of premises whenever in the opinion of the court it is proper); RCW 10.58.080 (place of crime); RCW 8.16.070 (eminent domain); CrR 6.9 ("place in which any material fact occurred"). Nor can it be properly characterized as a demonstration or experiment. *Cf. Sewell v. MacRae,* 52 Wn.2d 103, 323 P.2d 236 (1958); *Quinn v. McPherson,* 73 Wn.2d 194, 437 P.2d 393 (1968). Further, this was not an improper jury experimentation during a view. *Cf. Cole v. McGhie,* 59 Wn.2d 436, 361 P.2d 938 (1961); *Steadman v. Shackelton,* 52 Wn.2d 22, 322 P.2d 833 (1958). Rather, it was the observation of an object, the condition of which was in dispute, when the object itself could not be admitted as evidence in the normal way.

The method by which an observation may take place is within the trial court's discretion. In some cases it may be best to bring an animal or other object into the courtroom. In other cases this may be impossible or undesirable. In some cases the court may even find it necessary to conduct a part of the trial outside the courtroom as was done in *State v. Brown,* 31 Wn.2d 475, 489, 197 P.2d 590 (1948), *aff'd on rehearing,* 202 P.2d 461 (1949):

> "The trial can be but in one place at a time, and that place is where the judge presides and the evidence is produced."

We think a properly constituted court, where all proper and necessary persons are in attendance, may be conducted at such places as convenience dictates. Nor do

we think the place need be any particular structure, building, or room. The court, as such, is where the judge presides, and, within reason, the court has discretion in determining the place. In this instance, the automobile could not be brought into the courtroom. As a matter of convenience, the court in its entirety adjourned to the courtyard, where the car was. We find no error in this.

We find no abuse of discretion as to the method or place of the observation.

Plaintiffs also excepted to the giving of instruction No. 7:

One who keeps a dog, who knows, or reasonably should know, that the dog has dangerous tendencies likely to cause the injury complained of, has a duty to kill the animal or confine it so that it is impossible for it to injure anyone.

This was a correct statement of the law, however, *see Johnston v. Ohls, supra.* It was relevant to the duty of the owner of an alleged dangerous animal. Thus, there was no error.

Plaintiffs also assert the instructions unfairly highlighted one aspect of the case. However, by failing to set out verbatim the text of the jury instructions excepted to in this assignment of error, plaintiffs did not comply with RAP 10.4(c). Furthermore, they lumped objections to several instructions into one assignment of error in violation of RAP 10.3(g). While this alone is sufficient to reject the claimed error, we have reviewed the instructions and find no merit in plaintiffs' contention.

██ Plaintiffs further assert the failure of the trial court to give their proposed instructions was error in that those given failed to fairly present their side of the case. Here also, the proposed instructions were not set out verbatim as required by RAP 10.4(c). Thus, we will not consider the claimed error. Nevertheless, the instructions given were sufficient, when considered as a whole, to allow each party to argue satisfactorily each theory of the case which was supported by substantial evidence. *See State v. Elder,* 70 Wn.2d 414, 423 P.2d 533 (1967); *Hayden v. Insurance*

*Co. of N. America,* 5 Wn. App. 710, 490 P.2d 454 (1971). Finding no error, we affirm the Court of Appeals.

UTTER, C.J., and ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.