[No. 13465-2-III.    Division Three.    February 23, 1995.]

KURT SCHNEIDER, *Appellant*, v. DONALD STRIFERT,
ET AL, *Respondents*.

*William J. Flynn, Jr.,* and *Flynn, Merriman & Palmer,* for appellant.

*Harvey Faurholt* and *Horton, Wilkins, Faurholt,* for respondents.

THOMPSON, C.J. — Kurt Schneider appeals the summary judgment dismissal of his negligence claim against Donald and Marian Strifert. Schneider was seriously injured when his motorcycle hit the body of a Doberman pinscher lying crossways in his lane of travel on Interstate 82 in Pasco. The morning before the accident, the dog tunneled out of a chicken pen the Striferts used to confine it. It entered the interstate and was hit by another vehicle before Schneider collided with it.

Schneider commenced this negligence action against Striferts and Michael and Donna Beck. The dog belonged to Becks and Striferts kept it for them. Schneider claimed all Defendants were negligent because they violated a county ordinance making it illegal for a dog to run at large and because they knew or should have known a chicken pen could not effectively confine a 100-pound Doberman.

The trial court dismissed Becks as parties and granted Striferts' summary judgment motion dismissing the lawsuit. Schneider appeals only the dismissal of his negligence claim against Striferts. We reverse and remand for trial.

## CONTENTIONS

Schneider contends Striferts had a common law duty and a duty imposed by the Franklin County Animal Control Ordinance to prevent the Doberman from roaming at large. Since Mrs. Strifert admitted knowing the dog left their property on other occasions and a state trooper testified in deposition that he was told the dog had previously gotten onto a highway, Schneider maintains the dog's entry onto the interstate was foreseeable. Schneider also contends the affidavits he submitted showed that Striferts' efforts to restrain the dog were unreasonable, or at least created an issue for the trier of fact. He relies, in part, on the Restatement (Second) of Torts § 518 (1977) and *Arnold v. Laird*, 94 Wn.2d 867, 621 P.2d 138 (1980).

Striferts contend there was no evidence to show they failed to assert the type of control over the dog which a reasonable person would exercise under the circumstances. They contend the chicken pen was a reasonable means of confining the Doberman because it was "substantial",[1] was not in need of repair, and the dog had never escaped from it before. Further, because they had no knowledge of the dog's vicious or dangerous tendencies and its entry onto the interstate was not foreseeable, Striferts contend they were entitled to judgment as a matter of law. They also cite the Restatement (Second) of Torts § 518 and *Arnold*.

---

[1] In deposition, Ms. Beck testified that the posts were made of railroad ties and the wiring, which was buried in the dirt, was 1-inch "horse wire".

Negligence

*Arnold* was a dog bite case tried on a theory of strict liability. The plaintiffs' child in that case was attacked by a neighbor's dog as she climbed on a fence which separated the properties. Plaintiffs attempted to inject a negligence theory into the case by means of supplemental jury instructions which the trial court refused to give. In determining whether the trial court erred in refusing the instructions, *Arnold* acknowledged section 518 of the Restatement (Second) of Torts which recognized two separate causes of action regarding injury caused by animals: (1) strict liability if the animal has known dangerous propensities abnormal to its class and (2) negligence liability where there are no known dangerous propensities.

Schneider's sole theory of liability is negligence. Negligence is "conduct which falls below the standard established by law for the protection of others against unreasonable risk". *Hunsley v. Giard*, 87 Wn.2d 424, 435, 553 P.2d 1096 (1976) (quoting William L. Prosser, *Torts* § 43, at 250 (4th ed. 1971)). The standard of conduct can arise from common law principles. It can also be prescribed by legislative enactment. *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992). The applicable standard of care, or duty, is a question of law for the courts. *Hansen*, at 479.

Duty. There is no dispute that Striferts were subject to the Franklin County Animal Control Ordinance. That ordinance makes it unlawful to cause, permit, or allow any dog to "run at large" in defined areas, including the public streets. Franklin County, Wash., Ordinance 1-81 (1981). It also requires that "all things reasonably necessary" be done to insure compliance with the ordinance.

In determining whether a court may adopt a legislative enactment as a standard of conduct, Washington has adopted the following 4-part test from the Restatement (Second) of Torts § 286 (1965):

> The court may adopt as the standard of conduct of a reasonable [person] the requirements of a legislative enactment . . . whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*Hansen*, at 480; *Young v. Caravan Corp.*, 99 Wn.2d 655, 659-60, 663 P.2d 834, 672 P.2d 1267 (1983).

■ The Franklin County Animal Control Ordinance meets the Restatement test. One of the purposes of the ordinance is to protect motorists, as evidenced by the purpose clause which includes the protection of "human safety". It also specifically prohibits a dog from roaming on "public streets" and "chasing cars". The ordinance's general prohibition against roaming dogs was clearly designed not only to protect against trespass, but to protect against a dog's entry onto a street or highway and the kind of harm such entry can entail. The particular interest which was invaded, the kind of harm which resulted, and the particular hazard Schneider and other motorists faced by an unrestrained dog entering a public highway were within the purview of the ordinance and establish Striferts' standard of conduct. As noted below, whether or not ordinary care could have guarded against the violation is a question for the trier of fact. *Hansen*, at 483.[2]

■ Even in the absence of the Franklin County Animal Control Ordinance, Striferts had a common law duty to exercise reasonable care to prevent the Doberman from running at large. Under *Arnold* and section 518 of the Restatement, a negligence cause of action arises when there is ineffective control of an animal in a situation where injury is reasonably foreseeable. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time. *Arnold*, at 871.

■ Foreseeability. The concept of foreseeability determines the scope of one's duty. *Christen v. Lee*, 113 Wn.2d

---

[2]Our conclusion is not without precedent. See *Deardorff v. Burger*, 414 Pa. Super. 45, 50-51, 606 A.2d 489, 492-93 (1992); *Miller v. Hurst*, 302 Pa. Super. 235, 448 A.2d 614 (1982) (en banc); *Endresen v. Allen*, 574 P.2d 1219, 1221-22 (Wyo. 1978).

479, 493, 780 P.2d 1307 (1989). Foreseeability depends on whether the injury should have been recognized by common experience, the special experience of the alleged wrongdoer, or by a person of ordinary prudence and foresight. *Gordon v. Deer Park Sch. Dist. 414*, 71 Wn.2d 119, 124-25, 426 P.2d 824 (1967). *See generally* W. Page Keeton et al., *Prosser & Keeton on Torts* § 32, at 175, 185 (5th ed. 1984). It is not necessary that the defendant should have foreseen the extent of the harm or the manner in which it occurred. The harm sustained need only be within the general field of danger covered by the defendant's duty. *Christen*, at 492 (citing *Maltman v. Sauer*, 84 Wn.2d 975, 981, 530 P.2d 254 (1975)). Foreseeability is a question of fact for the jury unless reasonable persons could reach but one conclusion. *Hansen*, at 483-84; *Christen*, at 492; *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932, 653 P.2d 280 (1982).

Here, there was deposition testimony that the dog previously strayed from Striferts' premises and, on one occasion, may have entered a public highway. There was also evidence that the male Doberman was highly motivated to leave at the time of the collision because a neighbor's female dog was in heat. At a minimum, such evidence created an issue of fact as to whether Striferts could reasonably foresee that the dog would escape and cause injury to a motorist.

Breach of Duty. Although Striferts violated the Franklin County Animal Control Ordinance, violation of an ordinance is evidence of negligence, not negligence per se. RCW 5.40.050.

The practical effect of RCW 5.40.050 is:

> to eliminate . . . the "strict liability" character of statutory violations . . . [and] to allow a jury to weigh the violation, along with other relevant factors, in reaching its ultimate determination of liability.

*Doss v. ITT Rayonier, Inc.*, 60 Wn. App. 125, 129-30, 803 P.2d 4, *review denied*, 116 Wn.2d 1034 (1991). In weighing the relevant factors, the trier of fact may find a statutory violation is not negligence where the violation is due to some cause beyond the violator's control, and ordinary care could not have guarded against the violation.

*Hansen*, at 483.

Whether Striferts' standard of care arose by ordinance or common law, there were issues of fact as to whether Striferts knew or should have known that their means of confining the dog fell below that standard. A summary judgment should be granted only if reasonable persons could reach but one conclusion from the evidence. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). All facts and reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party. *Wilson*, at 437.

In opposing summary judgment, Schneider submitted two affidavits. One affidavit was from the field supervisor for the Benton-Franklin Humane Society. Noting that a Doberman is a large muscular dog with shovel-like paws and digging is a known trait of dogs, the affidavit concluded the chicken pen of the type used by Striferts was inadequate. He also stated that the dog was accustomed to being able to run free, making it more likely that he would try to escape. It was the field supervisor's opinion that the poultry pen Striferts used to confine the dog did not meet the minimum standard a reasonable person should adhere to under the circumstances.

A second affidavit submitted by Schneider was from an animal trainer and former kennel owner and operator with extensive experience and knowledge regarding dogs. She stated it is foreseeable that any dog will dig to escape a fenced-in area sooner or later, particularly if the confined dog is a male and a female dog in heat is outside the pen and the dog is not regularly penned up. She concluded Striferts' chicken pen was not a reasonable means to restrain a 100-pound Doberman.

Striferts submitted no affidavits to controvert those submitted by Schneider. They presented no evidence that the Doberman ran at large due to some cause beyond their control, although in depositions they explained that the chicken pen was substantial and the dog had not tunneled out of it before. They admitted the dog had been frequently chained or allowed to be "free" and Mrs. Strifert stated she was not surprised the dog escaped. Such evidence clearly creates an

issue of fact as to the reasonableness of the means used by Striferts to prevent the dog from running at large.

Striferts call our attention to Restatement (Second) of Torts § 518 cmt. j, at 32 (1977), which states:

> Although it is not impossible to confine dogs to the premises of their keepers or to keep them under leash when taken into a public place, they have been traditionally regarded as unlikely to do substantial harm if allowed to run at large, so that their keepers are not required to keep them under constant control.

As stated by Judge Kaye in his dissent in *Young v. Wyman*, 76 N.Y.2d 1009, 1012, 566 N.E.2d 1157, 1158, 565 N.Y.S.2d 752, 753 (1990):

> [W]hatever may have been the expectation in an earlier, more agricultural age, it is no longer expected that dogs will roam the highways of this State at will.[3]
>
> . . . While I fully agree that it is appropriate to look at the character of a class of animals in determining what amount of care must be devoted to their custody, the current New York statutes indicate that we have parted company with the traditional regard reflected in the Restatement.

Washington has also parted company with the traditional notion expressed in comment j of the Restatement. *See* RCW 16.08.010 (an owner or keeper of any dog which kills or injures any animal is strictly liable to the animal's owner); RCW 16.08.020 (it is lawful to kill a dog roaming at large if its owner or keeper had notice that the dog chased, bit, injured or killed a domestic animal and failed to keep the dog confined); RCW 16.08.040 (strict liability for dog bites sustained by persons in public and certain other places regardless of whether the dog is known to be vicious before the biting). More importantly, the Franklin County Animal Control Ordinance rejects the traditional notion expressed in comment j.

## CONCLUSION

The evidence, viewed in a light most favorable to Schneider, was sufficient to justify submission to the finder of fact

---

[3]The *Young* majority adopted language from the Restatement that a dog, unless vicious, has a right on the highway. Therefore, its presence on a street did not give rise to a presumption of negligence.

the question whether Striferts should reasonably have foreseen that injury to a motorist would result from their failure to secure the dog. Further, based on the statement in the affidavits regarding the inadequacy of the chicken pen and the deposition testimony regarding the dog's prior behavior, there were genuine issues of fact as to the reasonableness of the measures taken by Striferts to confine the dog.

We reverse and remand for trial.

MUNSON and SWEENEY, JJ., concur.