[No. 15240-5-III. Division Three. April 24, 1997.]

GAIL MORINAGA, *Appellant*, v. SEE VUE, ET AL.,
*Respondents.*

*Alan L. McNeil* of *University Legal Assistance*, for appellant.

*Dan W. Keefe, Robert F. Sestero II*, and *Keefe, King & Bowman, P.S.; Christine O. Gregoire, Attorney General*, and *Pamela V. Reuland, Assistant*, for respondents.

*Stephanie M. Ammirati* and *Patricia S. Novotny* on behalf of The Northwest Women's Law Center, amicus curiae.

THOMPSON, J. — Gail Morinaga sued Dr. George Rice and Dr. Mary Sanderson for failure to provide informed consent, and breach of professional duty regarding a sterilization procedure. She sued See Vue, Jean Soliz, the Secretary of the Department of Social and Health Services (DSHS), and DSHS for civil rights violations under 42 U.S.C. § 1983 and battery. These claims were dismissed pursuant to summary judgment motions by each set of defendants. She now appeals, claiming genuine issues of material fact exist precluding summary judgment. We affirm in part and reverse in part.

Ms. Morinaga is a 25-year-old developmentally disabled woman with a full-scale IQ of 62. Although several physicians have examined Ms. Morinaga and determined she is in the mentally retarded range of intellectual functioning, she has never been declared legally incompetent.

When Ms. Morinaga began a physician-patient relation-

ship with Dr. Rice in 1987, his records indicated that she appeared mentally impaired, slow to answer and confused. At that time she was 16 and eight weeks pregnant. She sought to terminate that pregnancy. Between 1987 and 1990, Ms. Morinaga became pregnant three other times. She carried only one of the pregnancies to term.

On July 18, 1988, shortly after she gave birth to her daughter, Stephanie, DSHS became concerned about Ms. Morinaga's ability to parent. On August 18, DSHS filed a dependency petition. Since then Stephanie has lived with her paternal grandmother, Lavon Partridge, who is currently Stephanie's legal guardian.

Ms. Morinaga became pregnant a fifth time. She chose to carry this baby to term and also wanted to retain custody. Ms. Morinaga was working with Shirley Pellow, a public health nurse, in preparing for the birth of her child. She was given a list of things she needed to do in order to retain custody. She complied with all the requirements.

In November 1991, she spoke with See Vue, a DSHS social worker who oversaw Stephanie's case. She told him she wanted to keep her child and asked what she needed to do. She alleges that he then told her she could keep the child if she had a tubal ligation. He denies ever making this statement. He said he told her to keep working with Ms. Pellow.

Mike Partridge, Ms. Morinaga's then boyfriend and father of the child, stated that Ms. Pellow suggested sterilization to Ms. Morinaga. He thought this was a good idea. He also told Ms. Morinaga that it would "last a lifetime." Sarah Moore, a legal intern, stated Ms. Morinaga told her that someone at the hospital told her to get a tubal ligation if she wanted to keep the child. The intern later learned from Molly Crumet, a DSHS social worker, that Mr. Vue had told Ms. Morinaga to get a tubal ligation. Lavon Partridge also discussed the tubal ligation with Ms. Morinaga. She stated Ms. Morinaga only wanted the procedure so that she could keep her child.

On February 11, 1992, prior to delivering her child, Ms. Morinaga told Dr. Rice she wished to have a tubal ligation. Dr. Rice stated he explained the permanent and irreversible nature of the procedure. He also explained to her how a tubal ligation was performed. Ms. Morinaga signed a consent to sterilization form, which was witnessed by Ms. Lopes, Dr. Rice's nurse. The consent form was backdated to January because, according to Medicare regulation, the form must be signed 30 days prior to the procedure in order to receive payment. Dr. Rice stated he was not aware Ms. Morinaga was seeking a tubal ligation in order to gain custody of her unborn child. He further stated that his five-year relationship with her in which she always kept appointments, dressed and acted appropriately, sought medical attention when necessary, and made independent decisions about her medical care indicated to him she had the capacity to consent to the sterilization. Ms. Morinaga claims she received no information about the procedure.

Ms. Morinaga gave birth to Stefano[1] on February 29, 1992. Dr. Sanderson delivered the baby as Dr. Rice was unavailable. After the delivery, Ms. Morinaga reaffirmed her wish to be sterilized. Dr. Sanderson asked if anyone with Ms. Morinaga objected to the procedure. Dr. Sanderson went over the procedure with Ms. Morinaga and explained its permanent nature. Ms. Morinaga signed a sterilization permit form and Dr. Sanderson performed the tubal ligation.

Molly Crumet of Child Protective Services obtained a court order placing Stefano in shelter care.[2] Ms. Morinaga did not contest the order. Eventually, Mike Partridge, Stefano's father, was granted custody. Ms. Morinaga has executed a parenting plan which limits her visitation with her son to 15 supervised hours per week.

On July 15, 1995, Ms. Morinaga filed a complaint alleg-

---

[1] The spelling of "Stefano" is taken from the Dependency Petition filed March 2, 1992.

[2] Mr. Vue had no involvement in placing Stefano in shelter care.

ing professional negligence against Dr. Rice and Dr. Sanderson. She asserted they violated the informed consent laws and breached their professional duties. She also filed suit against Mr. Vue, Ms. Soliz, the Secretary of DSHS, and DSHS alleging violations of 42 U.S.C. § 1983 and battery. The court granted the aforementioned defendants' motions for summary judgment. Ms. Morinaga's motion to reconsider was also denied, and she now appeals. The Northwest Women's Law Center has filed an amicus curiae brief in support of Ms. Morinaga's claim which was also considered on appeal.

■ Appellate courts review summary judgment orders de novo. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 625, 911 P.2d 1319 (1996). Summary judgment is proper when there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. CR 56(c); *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). A court must consider all the evidence submitted in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper when reasonable persons looking at all the evidence could reach only one conclusion. *Id.* Summary judgment is not proper when credibility issues involving more than collateral matters exist. *Powell v. Viking Ins. Co.*, 44 Wn. App. 495, 503, 722 P.2d 1343 (1986).

Ms. Morinaga contends the court erred by dismissing her informed consent claim. In order to establish an informed consent claim, a patient must show:

(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

(b) That the patient consented to the treatment without being fully aware of or fully informed of such material fact or facts;

(c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;

(d) That the treatment in question proximately caused injury to the patient.

RCW 7.70.050(1). Ms. Morinaga alleges that she did not give her informed consent because she lacked the capacity to consent to the sterilization.[3]

 The premise upon which informed consent is based is that adults of sound mind have a right to make decisions about their own medical treatment. *Estate of Lapping v. Group Health Coop.*, 77 Wn. App. 612, 623, 892 P.2d 1116 (1995). Ms. Morinaga contends she did not consent because she lacked capacity to do so because of her developmental disability. The doctors contend that Ms. Morinaga has not been declared legally incompetent; thus, she had the capacity to consent. Whether Ms. Morinaga was declared legally incompetent is irrelevant. RCW 7.70.065(1)(a)-(f) provides:

(1) Informed consent for health care for a patient who is not competent, as defined in *RCW 11.88.010(1)(b), to consent may be obtained from a person authorized to consent on behalf of such patient. Persons authorized to provide informed consent to health care on behalf of a patient who is not competent to consent shall be a member of one of the following classes of persons in the following order of priority:

(a) The appointed guardian of the patient, if any;

(b) The individual, if any, to whom the patient has given a durable power of attorney that encompasses the authority to make health care decisions;

(c) The patient's spouse;

(d) Children of the patient who are at least eighteen years of age;

(e) Parents of the patient; and

---

[3]Ms. Morinaga argues that we must apply some form of heightened scrutiny to her claim because of constitutional implications. She argues that Dr. Rice violated her constitutional right to procreation. The right protected by the constitution is the right to choose whether to procreate. However, Dr. Rice is not a state actor. Her constitutional arguments will be addressed in her claim against the State and Mr. Vue as its agent.

(f) Adult brothers and sisters of the patient.

*Reviser's note: RCW 11.88.010 was amended by [Laws of] 1990, ch. 122, § 2, changing subsection (1)(b) to subsection (1)(e).

A plain reading of this statute indicates that someone need not be declared legally incompetent to be incompetent to give health care decisions. Only the first two of the six classes of individuals authorized to consent bear a legal relationship to the patient. Thus, the fact that Ms. Morinaga was not declared incompetent in a court of law does not mean she was competent to give consent to health care. Developmental disabilities can be the basis for deeming an individual incompetent to give informed consent to health care under RCW 7.70.050 and .065. RCW 11.88.010(1)(e).

██ Ms. Morinaga asserts that several doctors have diagnosed her as developmentally disabled. Dr. Dennis Pollack, a clinical psychologist, stated she was disabled and unable to understand the nature of her consent to sterilization. She also contends Dr. Rice knew or should have known of her disability and not accepted her consent. Dr. Rice testified he observed Ms. Morinaga over a five-year period and believed that, although she was slow, she demonstrated an ability and a desire to make independent medical decisions for herself. Although the law presumes competency, the presumption may be rebutted by clear, cogent and convincing evidence. *Grannum v. Berard*, 70 Wn.2d 304, 307, 422 P.2d 812, 25 A.L.R.3d 1434 (1967). In the present case there is evidence which suggests Ms. Morinaga is competent and evidence which suggests she is not. Since her capacity is a factual issue, summary judgment was not proper.

Dr. Rice and Dr. Sanderson contend that Ms. Morinaga's signature on the consent form is sufficient to establish consent. Although a legally competent patient's signature on a consent form is prima facie evidence of consent, such evidence can be rebutted under a preponderance of the evidence standard. RCW 7.70.060. Ms. Morinaga presented sufficient evidence to rebut the presumption of consent. Thus, summary judgment was not proper.

■ Ms. Morinaga also argues that Dr. Rice and Dr. Sanderson failed to inform her of all the material facts. The doctors contend that this argument is not properly before this court because Ms. Morinaga first raised it in her motion for reconsideration. Appellate courts generally do not consider issues which were not raised below. *Washington Fed'n of State Employees, Council 28 v. Office of Fin. Management*, 121 Wn.2d 152, 163, 849 P.2d 1201 (1993). Any review of this issue would be for an abuse of discretion since it pertains to the motion for reconsideration. *Holaday v. Merceri*, 49 Wn. App. 321, 324, 742 P.2d 127, *review denied*, 108 Wn.2d 1035 (1987).

■ Only newly discovered evidence which was not available may be considered on a motion for reconsideration. CR 59(a)(4). Ms. Morinaga contends she was not told all the material facts relating to the sterilization procedure, such as all the viable alternatives. This was information within her possession at the time of summary judgment; thus it cannot be considered. *See Adams v. Western Host, Inc.*, 55 Wn. App. 601, 608, 779 P.2d 281 (1989). The court properly denied the motion for reconsideration.

■ Ms. Morinaga next argues the court erred by dismissing her claims for breach of professional duty. In order to recover damages for negligent medical treatment, the patient must establish the doctor did not comply with the accepted standard of care. RCW 7.70.030(1). The standard of care is established by showing "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1). Absent exceptional circumstances, a patient must produce expert testimony to establish if the practice questioned is reasonably prudent. *McLaughlin v. Cooke*, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989); *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 451, 663 P.2d 113 (1983). In addition to establishing the prudence of a particular practice, expert

testimony is also required to show causation. *Harris*, 99 Wn.2d at 451. In an action for medical negligence, a doctor is entitled to summary judgment once he establishes the plaintiff lacks competent expert testimony. *Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689, *review denied*, 122 Wn.2d 1010 (1993).

Ms. Morinaga failed to present any expert testimony about the practices of prudent doctors who perform sterilization procedures. Only if evidence is observable by lay persons and describable without medical training is expert testimony not necessary. *Harris*, 99 Wn.2d at 449. Sterilization practices and procedures are not facts which can be observed by lay persons. Ms. Morinaga needed to establish the standard of care by expert testimony, and she failed to do so.

 Ms. Morinaga claims Dr. Rice's violation of a federal regulation was negligence per se creating liability under RCW 7.70.040. Negligence per se exists in Washington in only three instances involving statutes relating to (1) electrical fire safety, (2) the use of smoke alarms, and (3) driving under the influence. RCW 5.40.050. Violation of any other statute or rule is merely evidence of negligence. *Id.* A court may look to a legislative enactment to establish a duty if the enactment's purpose (1) protects the class of persons to which the injured party belongs, (2) protects the interest which was invaded, (3) protects the interest from the harm that occurred, and (4) protects the interest from the hazard from which the harm results. *Schneider v. Strifert,* 77 Wn. App. 58, 61-62, 888 P.2d 1244 (1995). Violation of an ordinance can establish duty and breach. *Doss v. ITT Rayonier, Inc.*, 60 Wn. App. 125, 130, 803 P.2d 4, *review denied*, 116 Wn.2d 1034 (1991).

Federal regulations require a 30-day waiting period between the date of the informed consent and sterilization. 42 C.F.R. § 441.253(d) (1997). The purpose behind this waiting period is in part to "assure that individuals considering sterilization are fully aware of the consequences and the available alternatives to sterilization, and have ample

time to consider the matter . . . ." 43 Fed. Reg. 52,171 (1978). This regulation protects Ms. Morinaga, and her class, from being sterilized without being fully aware of the consequences and alternatives. Dr. Rice admitted in his deposition he did not wait the 30 days required. Ms. Morinaga was unable to use that 30 days to fully consider her decision.

Duty and breach were established as a result of the violation of the regulation. Ms. Morinaga was sterilized; thus she was injured. The missing element is that of causation. Under *Harris,* causation also requires expert testimony which was not presented. Nor was Ms. Morinaga timely in raising this argument. The evidence supporting this argument was available at the time of summary judgment but was raised for the first time in her motion to reconsider. During his deposition, Dr. Rice testified about the altering of the date on the consent form, and the regulation. Thus, it was not newly discovered evidence. The court did not abuse its discretion in dismissing her professional negligence claim based upon violation of the Code of Federal Regulations.

Next Ms. Morinaga contends the court erred by dismissing her claim against DSHS and Mr. Vue under 42 U.S.C. § 1983. In order to establish a civil rights claim under 42 U.S.C. § 1983, a plaintiff must establish (1) that the defendant acted under the color of state law, and (2) the defendant's conduct deprived the plaintiff of a right guaranteed by the United States Constitution. *Brower v. Wells,* 103 Wn.2d 96, 106, 690 P.2d 1144 (1984). A public employee acting in his/her official capacity generally acts under the color of state law. *West v. Atkins,* 487 U.S. 42, 50, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Mr. Vue acted under the color of state law because his contact with Ms. Morinaga was as a caseworker at DSHS. In addition a constitutional right was involved. Sterilization encompasses an individual's right to privacy as well as a fundamental right to procreate. *In re Guardianship of Hayes,* 93 Wn.2d 228, 234, 608 P.2d 635 (1980). In addition it involves

a liberty right. *In re Dependency of J.H.*, 117 Wn.2d 460, 473, 815 P.2d 1380 (1991). The decision to procreate involves intimate and personal choices which are central to the notion of liberty protected by the Fourteenth Amendment. *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992).

■■ The real question is whether the alleged statement by Mr. Vue caused Ms. Morinaga's deprivation of her right to choose. Proximate cause is required to establish a claim under section 1983. *Arnold v. International Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th. Cir. 1981). Causation can be established by direct participation or by setting in motion a series of events which the actor should reasonably know would cause another to suffer a constitutional injury. *Id.* Mr. Vue denies making the statement. A question of fact exists as to whether the statement was made and its causal effect.

■ Reviewing all the evidence in the light most favorable to Ms. Morinaga, a question of fact exists precluding summary judgment.[4]

■■ Finally Ms. Morinaga contends the court erred by dismissing her battery claim against Mr. Vue. A battery is the intentional infliction of harmful bodily contact with a plaintiff. *Garratt v. Dailey*, 46 Wn.2d 197, 200, 279 P.2d 1091 (1955). To have the requisite intent, the actor must know with substantial certainty that the harm will occur. *Id.* Consent is a defense to a battery. *Id.*

The facts presented do not indicate that Mr. Vue knew with substantial certainty that Ms. Morinaga would get a tubal ligation. Since the facts do not support a finding that Mr. Vue intended to cause the harm, the court properly dismissed the battery claim.

---

[4]Mr. Vue also argues in his brief that Ms. Morinaga had an adequate state remedy which prevents her from prevailing. However, when a right under the due process clause is at issue, the existence of adequate state remedies is irrelevant. *Wood v. Ostrander*, 851 F.2d 1212, 1215 (9th Cir. 1988). The remedy which Mr. Vue points to is seeking custody of her children. This does not alter Ms. Morinaga's ability to bear additional children in the future, which was her injury under the claim.

■ Ms. Morinaga also requests her attorney fees pursuant to RAP 18.1. Under RAP 18.1 a section of the brief must set forth why a party is entitled to fees. *See Thweatt v. Hommel*, 67 Wn. App. 135, 148, 834 P.2d 1058, *review denied*, 120 Wn.2d 1016 (1992). Ms. Morinaga does not state why she is entitled to fees. Her request is denied.

We reverse the summary judgment dismissal of informed consent and 42 U.S.C. § 1983 claims. We affirm the summary judgment dismissal of breach of professional duty and battery claims. We deny Ms. Morinaga's request for attorney fees.

SCHULTHEIS, A.C.J., and KURTZ, J., concur.

Review denied at 133 Wn.2d 1012 (1997).