# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SHELLY CARR, individually, | ) |
| | ) No. 73927-1-I |
| Appellant, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) |
| JOSE AND LISA RIVEROS, | ) UNPUBLISHED OPINION |
| individually and in their marital | ) |
| capacity, | ) |
| | ) |
| Respondents, | ) |
| | ) |
| STATE FARM FIRE & CASUALTY, | ) |
| an Illinois corporation; and STATE | ) |
| FARM GENERAL INSURANCE | ) |
| COMPANY, an Illinois corporation, | ) |
| | ) FILED: November 28, 2016 |
| Defendants. | ) |

LEACH, J. — Shelly Carr appeals the trial court's summary dismissal of her claims against Lisa and Jose Riveros. After the Riveroses' dog bit her, Carr sued them, alleging common law negligence and statutory strict liability claims. Because the Riveroses did not breach any duty of care owed to Carr and Carr did not present any evidence that she had permission to enter the Riveroses' home, as required for her strict liability claim, we affirm the trial court.

## FACTS

Carr suffered a dog bite while accompanying her daughter, Brynn Sutherland, on a home inspection. Brynn and her husband, Ryan Sutherland,

(buyers) were prospective buyers of a home owned by Nicholaas and Lisa Groenveld-Meijer (sellers/landlords). Jose and Lisa Riveros rented the home from the sellers.

The Riveroses had a Rottweiler-Labrador mix named "Kid." They had owned Kid for over 13 years, and he had never bitten anyone or displayed aggressive tendencies. At the time of the inspection, Kid had cancer and difficulty walking. The Riveroses told the property manager and the sellers' real estate broker, David Hogan, that they would leave Kid alone in the laundry room with the door closed and that no one should enter that room. As a result, they "understood no one would go in the laundry room as [they] had always insisted that the dog be left alone."[1]

Before the scheduled inspection, Hogan sent an e-mail to Jose Riveros asking, "Is it possible to crate the dog? The buyers will need full access to each room in the house for their inspector." Jose and Hogan exchanged a few more e-mails, but Jose never agreed to crate the dog or remove him from the home. In an e-mail to the buyers' real estate broker, Henry Shim, Hogan said, "I have asked them to make sure you have access to the entire house. Suggested crating the dog but don't know their exact plans admittedly."

---

[1] Carr disputes this fact but points to no evidence in the record to contradict the Riveroses' assertion.

On the day of the inspection, the Riveroses left Kid in the laundry room before they left for work. The Sutherlands, Shim, Carr, Carr's husband, and the inspector, Michael Linde, attended the home inspection. When the inspection group arrived at the home, the laundry room door was closed.

Because Carr believed that she was experienced with dogs, she offered to enter the laundry room with Linde to test the dog's character and watch him while the inspector looked around the laundry room. Kid was lying on a pile of blankets and sniffed Carr's hand but did not otherwise react to their presence.

When Linde and Carr left the laundry room, they left the door open. They continued with the inspection, but Carr soon noticed Kid out of the laundry room and lying on the hardwood floor, unable to stand. Kid appeared to be trying to get back into the laundry room.

Because her previous interaction with Kid had seemed friendly, Carr decided to help the dog back into the laundry room. She first tried to pick up the dog. Kid made a noise, and Carr realized the potential danger of picking up a dog she didn't know. She then crouched in front of Kid and held her hand six inches in front of his nose. Kid bit her outstretched hand.

Carr sued for damages caused by the dog bite. Her complaint alleged common law negligence and strict liability under RCW 16.08.040. The trial court granted the Riveroses' summary judgment motion. Carr moved for

reconsideration, submitting the declaration of Henry Shim. The trial court denied this motion. Carr appeals.

ANALYSIS

*Standard of Review*

This court reviews summary judgment orders de novo, engaging in the same inquiry as the trial court.[2] Summary judgment is proper if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists if reasonable minds could differ regarding the facts controlling the outcome of the litigation.[4] Carr claims that she raised issues of material fact about her two theories of liability: common law negligence and strict liability under RCW 16.08.040.

*Common Law Negligence*

Carr alleged that the Riveroses breached a duty of care when they failed to crate their dog as the real estate brokers recommended. The common law provides liability for dog bites based on strict liability and negligence.[5] A dog owner has strict liability for injuries caused by the dog when the owner knows or

---

[2] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003).
[3] CR 56(c); Michak, 148 Wn.2d at 794-95.
[4] Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779 (2011).
[5] Sliger v. Odell, 156 Wn. App. 720, 731, 233 P.3d 914 (2010).

has reason to know that the dog has vicious or dangerous propensities.[6] Carr does not dispute that the Riveroses had no notice that Kid had any dangerous propensity; thus, she now asserts only a common law negligence claim.

The Restatement (Second) of Torts § 518 (1977) provides,

Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,

(a) he intentionally causes the animal to do the harm, or

(b) he is negligent in failing to prevent the harm.

"'[A] negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence.'"[7] "The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen."[8]

Carr characterizes her common law claim as "negligent failure to confine." The Riveroses counter that § 518 does not define the duty of care as the duty to confine or crate their dog but only to exercise reasonable care and control. We

---

[6] Arnold v. Laird, 94 Wn.2d 867, 870, 621 P.2d 138 (1980) (citing Johnston v. Ohls, 76 Wn.2d 398, 457 P.2d 194 (1969)).

[7] Sliger, 156 Wn. App. at 731-32 (quoting Arnold, 94 Wn.2d at 871).

[8] Arnold, 94 Wn.2d at 871.

agree that failure to confine is not, in itself, negligent. A dog owner's failure to confine is only negligent when it caused foreseeable injury.

The Riveroses claim that they could not have foreseen the injury because Kid had never shown any vicious or dangerous propensity. Carr contends that lack of knowledge of the animal's dangerous propensity relates only to the common law cause of action for strict liability, not negligence. But the relevant case law considers knowledge of dangerous propensity in analyzing whether an injury is foreseeable.[9] Thus, notice of dangerous propensity is relevant to both strict liability and negligence common law causes of action.

Carr asserts that a jury should have decided whether her injury was foreseeable. "Foreseeability is a question of fact for the jury unless reasonable persons could reach but one conclusion."[10] In Beeler v. Hickman,[11] this court affirmed summary judgment dismissal of the plaintiff's common law negligence claim because there was insufficient evidence of negligence when the dog owner had no reason to know the dog would bite the plaintiff. The defendant dog owner's admission that the dog would react if provoked was not enough evidence of negligence to survive summary judgment.[12] Like in Beeler, the Riveroses had

---

[9] See, e.g., Sliger, 156 Wn. App. at 732; Beeler v. Hickman, 50 Wn. App. 746, 754, 750 P.2d 1282 (1988).

[10] Schneider v. Strifert, 77 Wn. App. 58, 63, 888 P.2d 1244 (1995).

[11] 50 Wn. App. 746, 754, 750 P.2d 1282 (1988).

[12] Beeler, 50 Wn. App. at 754.

no reason to believe that Kid would bite anyone, particularly because he was old and sick and could barely walk. Carr implies that the dog's breed, Rottweiler-Labrador mix, shows dangerous propensity. But she offers neither evidence that the particular breed is prone to attacks nor legal authority to show that breed is a relevant consideration. She therefore fails to show how the breed creates a question of fact. Because the Riveroses had no reason to believe Kid, confined to a laundry room, would bite anyone, reasonable persons could reach no other conclusion than that the Riveroses were not negligent.

Carr contends that an injury was foreseeable because the Riveroses knew that prospective buyers would be inspecting the house. Carr further argues that the Riveroses knew that the inspection required access to the entire home, including the laundry room. But knowledge of the inspection does not create a question of fact about the likelihood of injury when the dog has no history of viciousness and was confined to a room to which the Riveroses had denied access. Opportunity does not equal foreseeability.[13]

---

[13] The parties discuss the trespasser/licensee/invitee distinctions in connection with the Riveroses' common law duty. But Carr's status as a trespasser is not relevant to this case. The Riveroses explain the trespasser analysis in anticipation of a premises liability argument, but Carr does not assert a premises liability cause of action. Further, the trespasser analysis does not relate to the Riveroses' duty of care under § 518. We need not determine whether Carr was a trespasser.

Under the circumstances, the Riveroses exercised a reasonable amount of control when they confined Kid to one room and declared that room to be off limits. Because Carr does not create any issue of fact that the Riveroses breached a duty of care, the trial court properly dismissed this claim.

*Statutory Strict Liability*

Carr also asserts a strict liability claim under RCW 16.08.040(1), which provides,

> The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

Carr does not claim she was in a public place. Instead, she argues that she was lawfully in a private place.[14]

> A person is lawfully upon the private property of such owner within the meaning of RCW 16.08.040 when such person is upon the property of the owner with the express or implied consent of the owner: PROVIDED, That said consent shall not be presumed when the property of the owner is fenced or reasonably posted.[15]

---

[14] The parties discuss Carr's status as trespasser or licensee in connection with her statutory strict liability claim. But the test for whether she was lawfully on the premises under RCW 16.08.050 does not involve the trespasser/licensee analysis. See Sliger, 156 Wn. App. at 730 ("The plain words of the statute focus on express or implied consent of the owner of the dog to determine whether one is legally on the dog owner's property. The word trespasser is not found in the statute.").

[15] RCW 16.08.050.

Because the dog bite statute does not define "implied consent," courts use the term's ordinary meaning.[16] "[I]mplied consent may be communicated based on 'conduct, omission, or by means of local custom.'"[17]

Carr offers three alternative arguments to show that she was lawfully on the property. First, she contends that she had the Riveroses' implied consent to be on the premises. She also contends that she could presume consent through custom. Lastly, she maintains that she did not need the Riveroses' consent because she had the consent of the sellers. We find none of Carr's arguments persuasive.

First, Carr fails to show that she had the Riveroses' permission. She concedes that the Riveroses did not give her express permission to enter the property, but she claims that she had their implied permission because they knew about the home inspection and never forbade her entry. According to Carr, the Riveroses' failure to expressly prohibit her entry implied that she had permission to enter. But because the Riveroses never knew that Carr was going to be on the property, they had no opportunity to object to her access. It was not reasonable for Carr to infer she had permission simply because she was not

---

[16] Sliger, 156 Wn. App. at 728.
[17] Sliger, 156 Wn. App. at 728 (quoting Singleton v. Jackson, 85 Wn. App. 835, 839, 935 P.2d 644 (1997)).

expressly excluded. We disagree with Carr's suggestion that the Riveroses' failure to object can be interpreted as implied consent.

Even if Carr had implied permission to enter the property, that permission did not extend to the laundry room. RCW 16.08.050 states that the consent of the owner "shall not be presumed when the property of the owner is fenced or reasonably posted."[18] Here, Carr does not dispute that all people involved were aware that the door was closed in order to keep the dog isolated. With this information, the closed door provided the functional equivalent of a fence or a warning sign. Therefore, the Riveroses' implied permission to enter the laundry room cannot be presumed.

Second, Carr does not provide sufficient evidence to create a question of fact that she could presume she had permission based on industry custom. Carr claims that she had implied permission to be on the premises because it is industry custom to have family members of potential buyers attend home inspections. But evidence from a single person or business is insufficient to establish industry custom.[19] At summary judgment, Carr introduced only Linde's

---

[18] See Sliger, 156 Wn. App. at 729.

[19] Swartley v. Seattle Sch. Dist. No. 1, 70 Wn.2d 17, 21, 421 P.2d 1009 (1966) ("'Although, where negligence is in issue, the usual conduct or general custom of others under similar circumstances is relevant and admissible, such custom may not be established by evidence of conduct of single persons or businesses.'" (quoting Miller v. Staton, 58 Wn.2d 879, 885, 365 P.2d 333 (1961))).

deposition testimony as evidence of custom. Linde testified that he had performed "thousands" of home inspections and that buyers' family members attended approximately 50 percent of those inspections. Linde's testimony relies solely on his personal experiences in his own business practice. His testimony does not include any opinion about any industry-wide practice. Linde's testimony alone does not establish an issue of fact about industry custom.[20]

Finally, Carr contends that she had the sellers' permission to be on the land.[21] But Carr fails to establish that the sellers, and not the Riveroses, should be considered the owners for purposes of determining lawful presence under RCW 16.08.050. Carr contends that as the actual owners of the land, only the

---

[20] Carr submitted a declaration from Shim with her motion for reconsideration to corroborate Linde's testimony, but, as discussed below in connection with the motion for reconsideration, we do not consider Shim's testimony.

[21] Carr cites Hansen v. Sipe, 34 Wn. App. 888, 664 P.2d 1295 (1983), in support of her assertion that she had adequate permission from the sellers. But the conclusions from Hansen are not relevant to any determination in this case. Hansen interprets a previous version of the RCW that drew a distinction between lawful presence on the dog owner's property and lawful presence on a third party's property. Hansen, 34 Wn. App. at 890-91. Carr argues that because the sellers and not the dog owners are owners of the property in question, a less restrictive definition of "lawful" should apply. But the dog bite statute no longer draws a distinction between lawful presence on the dog owner's property and lawful presence on a third party's property. See RCW 16.08.050. The ordinary definition of "lawful" applies in both circumstances. See Sliger, 156 Wn. App. at 728. Hansen does not help Carr's case.

consent of the sellers is required for "lawful" entry.[22] But Carr's interpretation of "lawful" ignores the rules that govern landlord and tenant rights and duties.

Carr offers no convincing explanation or authority for her assertion that the landlords' limited right to exhibit the property provides them with authority to give permission to all persons who wish to enter the property for an inspection associated with a prospective sale. "Except as limited by the terms of the leasehold, a tenant has a present interest and estate in the property for the period specified, which gives him exclusive possession against everyone, including the lessor."[23] Washington law requires tenants to permit landlords access to their home for certain limited purposes, including to show the house to potential buyers:

> The tenant shall not unreasonably withhold consent to the landlord to enter the dwelling unit at a specified time where the landlord has given at least one day's notice of intent to enter to exhibit the dwelling unit to prospective or actual purchasers or tenants. A landlord shall not unreasonably interfere with a tenant's enjoyment of the rented dwelling unit by excessively exhibiting the dwelling unit.[24]

---

[22] Carr cites McMilian v. King County, 161 Wn. App. 581, 601, 255 P.3d 739 (2011), for the proposition that the ordinary meaning of "lawful" requires the consent of the actual third party owners of the property, the sellers in this case. But McMilian is distinguishable because that case does not involve a landlord-tenant relationship.

[23] Aldrich v. Olson, 12 Wn. App. 665, 667, 531 P.2d 825 (1975).

[24] RCW 59.18.150(6); see also RCW 59.18.150(1).

The Supreme Court has observed that the scope of the landlords' entrance should not exceed the purposes contemplated by the Residential Landlord-Tenant Act of 1973.[25] Here, Carr's attendance at the inspection was not within the scope of the landlords' right to exhibit the property. Thus, the landlords' right to exhibit under RCW 59.18.150 cannot be the basis for Carr's permission to enter. Even if the landlords could grant the Sutherlands permission to enter their tenants' home, Carr was not a prospective purchaser, and she provides no evidence that the sellers ever gave her, specifically, permission to enter the property.

Carr claims the Riveroses' lease agreement gave the landlords the right to give permission to third parties to enter the property. The lease permitted the landlords to conduct inspections of the property. But the Sutherlands, not the landlords, were inspecting the property. The lease agreement gives inspection rights to the landlords specifically and cannot be the basis for the Sutherlands' authority to inspect the property. The Sutherlands were not agents of the sellers, and Carr certainly was not. The lease provisions about inspection do not show Carr was lawfully present.

---

[25] City of Pasco v. Shaw, 161 Wn.2d 450, 461, 166 P.3d 1157 (2007) (citing Kalmas v. Wagner, 133 Wn.2d 210, 219-20, 943 P.2d 1369 (1997)); ch. 59.18 RCW.

Carr also contends that only the sellers had the right to object to the scope of the inspection because they were in privity with the buyers but the Riveroses were not. The buyers' right to inspect, Carr asserts, came from the purchase agreement between the sellers and the buyers. The Riveroses could voice their objections only to the sellers, with whom they were in privity. Carr cites no authority for this privity argument. Moreover, the logic of her argument is flawed. A landowner is not in privity with the general public, and yet the landowner may restrict the public's entry on her private land.[26] In the context of this case, the presence or absence of privity does not dictate the scope of a tenant's right to exclude others from her property.

Carr did not present any evidence from which she could infer she had permission to enter the Riveroses' home. The trial court properly dismissed Carr's statutory claim.

*Motion for Reconsideration*

After the trial court dismissed her claims, Carr moved for reconsideration under CR 59, providing the newly acquired declaration from Shim. Carr asked that the court reconsider its decision on the following grounds: CR 59(a)(4), newly discovered evidence that the proponent could not have

---

[26] 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 1.2, at 4 (2d ed. 2004) ("A key attribute of [land] possession is that it carries with it the legally protected right to exclude other persons completely and with or without reason from the land possessed.").

-14-

discovered with reasonable diligence at the time of the hearing; CR 59(a)(7), no evidence or reasonable inference from the evidence justifies the verdict or the decision or verdict is contrary to law; CR 59(a)(8), there was an error in law; or CR 59(a)(9), substantial justice has not been done. This court reviews denial of a motion for reconsideration for abuse of discretion.[27]

First, Carr's claim about newly discovered evidence fails because she offers no explanation, either in her appellate briefing or her motion for reconsideration, for why the deposition of Shim could not have been taken before the summary judgment hearing. Further, Shim's testimony did not offer new evidence.[28] "'The realization that [the] first declaration was insufficient does not qualify the second declaration as newly discovered evidence.'"[29] Shim was not a newly discovered witness. Carr has failed to demonstrate that the trial court abused its discretion in denying reconsideration based on CR 59(a)(4).

As to CR 59(a)(8) and (9), Carr has not shown that the trial court made an error in law or that substantial justice has not been done.[30] And CR 59(a)(7) does not provide any basis for reconsideration because, as explained above, the

---

[27] Kleyer v. Harborview Med. Ctr. of Univ. of Wash., 76 Wn. App. 542, 545, 887 P.2d 468 (1995).
[28] See Sliger, 156 Wn. App. at 734.
[29] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 91, 60 P.3d 1245 (2003) (alteration in original) (quoting Adams v. W. Host, Inc., 55 Wn. App. 601, 608, 779 P.2d 281 (1989)).
[30] See Sliger, 156 Wn. App. at 734.

evidence on record supports dismissal of Carr's claims. The trial court did not abuse its discretion in denying Carr's motion for reconsideration.

CONCLUSION

Carr has not identified any material issue of fact that the Riveroses breached their duty of care in controlling their dog. Nor has she created an issue of fact about whether she was lawfully on the premises when the dog bite occurred. For these reasons, the trial court did not err in granting summary judgment in favor of the Riveroses.

We affirm.

_Leach, J._

WE CONCUR:

_Trickey, ACJ_